## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

---

|  |  |  |
|---|---|---|
| **SHARON HUNTER, et al.,** | : | |
| | : | |
| **PLAINTIFFS** | : | |
| | : | **Civ. Action No. 07-695(JMF)** |
| **v.** | : | |
| | : | |
| **DISTRICT OF COLUMBIA, et al.,** | : | |
| | : | |
| **DEFENDANTS.** | : | |

---

## SUPPLEMENT TO THE ADMINISTRATIVE RECORD

Attached is an index and supplement to the administrative record of proceedings at issue in this action. Provided herewith is a copy of the transcript for the January 11, 2007 hearing.

Respectfully submitted,

LINDA SINGER
Attorney General for the
    District of Columbia

GEORGE C. VALENTINE
Deputy Attorney General
Civil Litigation Division

/s/ *Edward P. Taptich*
EDWARD P. TAPTICH (012914)
Section Chief
Equity Section Two

/s/ *Veronica A. Porter*
VERONICA A. PORTER (412273)
Assistant Attorney General
Civil Litigation Division
Equity Section Two
441 Fourth Street, N.W., Sixth Floor South
Washington, D.C.  20001
(202) 724-6651 (phone)
(202) 727-3625 (facsimile)
veronica2.porter@dc.gov

**November 2, 2007**

**<u>Hunter v. District of Columbia, 07-695</u>**

**<u>Index of Record</u>**

1.      Certification of Record

2.      Transcript of Hearing, 1/11/07

# CERTIFICATION OF RECORD

### INDIVIDUALS WITH DISABILITIES EDUCATION ACT (IDEA) 20 USC § 1400

### DISTRICT OF COLUMBIA PUBLIC SCHOOLS
### *STUDENT HEARING OFFICE*
#### SPECIAL EDUCATION

In the Matter RE:      H████, T█████ vs. DCPS

Case Information:     Hearing Dates: 01/11/2007
                    Held at: **District of Columbia Public Schools Headquarters**
                                 **825 N. Capitol Street, N.E.**
                                 **Washington, D.C. 20002**
                    Student Identification Number:  9012234
                    Student's Date of Birth: ████/92
                    Attending School: **Johnson Junior High School**
                    Managing School:
                    Hearing Request Date(s): **11/28/2006**

## <u>CERTIFICATION OF RECORD</u>

     **I, Shawnta Maddox, Legal Assistant of the Student Hearing Office,**

DO HEREBY CERTIFY that the attached Record of Proceeding is the entire record in

the above entitled matter as of this date, consisting  of all letters, pleadings, orders,

exhibits and depositions.

     I FURTHER CERTIFY that the materials forwarded herewith are the true copy

of the original documents submitted in this matter.

EXECUTED this Tuesday, October 30, 2007.

                                      **LEGAL ASSISTANT**
                                **STUDENT HEARING OFFICE**

DISTRICT OF COLUMBIA PUBLIC SCHOOLS
STUDENT HEARING OFFICE

IN THE MATTER OF T█████ H██████

HEARING DATE:     JANUARY 11, 2007

TRANSCRIBED BY
LEGAL PERSONNEL, INC.   (301) 277-5711

<u>APPEARANCES</u>

HEARING OFFICER:                          Charles E. Jones


ATTORNEY ADVISOR FOR                      Mr. Aaron Price
    DISTRICT OF COLUMBIA
    PUBLIC SCHOOLS

ATTORNEY FOR PARENT                       Ms. Fatima Berry

Parent for T█████ H█████                  Ms. Sharon L. Hunter

Attorney                                  Genieve Tillary

1    HEARING OFFICER:  We're on the record.  It is now 11/36 on

2  January 11, 2007.  My name is Charles R. Jones and I'm the

3  Hearing Officer and I am convening an Administrative Due Process

4  Hearing on behalf of T██████ H██████.  Now for the purposes of the

5  record, I'd like everyone to introduce themselves.  Counsel for

6  DCPS.

7    MR. PRICE:  Good Morning. Gary E. Price, Sr., attorney

8  advisor appearing on behalf of DC Public Schools.

9    MS. BERRY:  Good Morning, Berry, attorney for the mother.

10    MS. HUNTER: Sharon Hunter, the parent of T██████ H██████.

11    MS. TILLARY: Genieve Tillary, attorney.

12    HEARING OFFICER:  All right at the conclusion of the

13  Hearing, within ten calendar days within the 45 day limit, I

14  will prepare an Order.  That Order is appealable by either party

15  to a court of law.  Now as it relates to the disclosure letters,

16  I have no disclosure letters in the record.  The disclosure –

17  what is dated January 4th, the other is January 3rd.  Do either of

18  the counsels have any problems with the admissibility.

19    MR. PRICE: Yes.

20    MS. PRICE: Oh you do.

21    MR. PRICE: DCPS has objects to documents 1 through 27 as

22  irrelevant, based upon the complaint.  The issues here arise

23  pursuant to an HOD that was dated June – June 19th, 06.

1    Everything prior to document number 27 precedes that date and is

2    not applicable to the issues before the Hearing Officer as

3    raised in the complaint.

4            HEARING OFFICER: Okay, Ms. Berry what is your response to

5    that.

6            MS. BERRY: My response is the DCPS cannot tell if the

7    parent or parent's counsel what documents are relevant to the

8    case, number one.  And number two, unless DCPS can point to me

9    an IDEA where it allows for the documents to be stricken off the

10   record if they are disclosed within the five day disclosure

11   doesn't have an argument.  And number three, the issues in the

12   complaint also go back two years as a result of the documents in

13   the record, depending on how I use them in my case, because I

14   will be the one putting on our case.

15           HEARING OFFICER: All right that's enough.  I'll overrule

16   your objection.  I'll note in the record that you have a

17   continuing objection as to documents 1 through --.

18           MR. PRICE: Six.

19           HEARING OFFICER: 26.  All right.

20           MS. BERRY: And my objections to these documents is that

21   they were not sent to me in the appropriate timeframe,

22   (inaudible) that the (inaudible) indicates, the fifth of January

23   and/or (inaudible).

4

1    MR. PRICE: It is DCPS position in my personal

2    representation in fact that I did do the disclosure document

3    myself and it was done on the 4th at 11 p.m. at night.  And the

4    machine has not been adjusted to account for the savings time

5    change - the daylight savings change in time.  That's my

6    representation.

7    HEARING OFFICER: Well I usually do strict compliance with

8    the 5-day rule. I'll reserve my judgment on it at this point.

9    Let's go forward.

10    MS. BERRY: DSPS failed to adhere June 19th 06 Hearing

11    Officer's determination because they did not complete the psycho

12    education evaluation within the appropriate time as ordered in

13    the HOD.  Parent's then took it upon herself as provided by the

14    Hearing Officer's determination to have the evaluation

15    independently. The evaluation was forward to DC Public School on

16    April 19th, of 2006 and that's --.

17    HEARING OFFICER: What evaluations were they to provide?

18    MS. BERRY: The psycho educational evaluation.

19    HEARING OFFICER: Is that the only one?

20    MS. BERRY: Yes sir. Part of the HOD.  Okay?

21    HEARING OFFICER: All right. Go ahead.

22    MS. BERRY: On October the - DCPS forwarded a letter to

23    convene an IEP/MDT meeting in our response to our request

1  meeting due to the evaluation we completed. We responded to the

2  request for the meting several times.  These are documents

3  number 32, number 33 and document number 20 – I'm sorry document

4  number 30 and document number 29.

5      HEARING OFFICER: So are you indicating that you then

6  request – after you got the independent evaluation, you

7  contacted DCPS to convene an MDT meeting?

8      MS. BERRY: Correct.

9      HEARING OFFICER: And there was a lot of --?

10     MS. BERRY: Back and forth.

11     HEARING OFFICER: Back and forth.

12     MS. BERRY:  We sent them and they (inaudible) pages for

13 every document that we sent them for every letter that we sent

14 them; we finally held a meeting on October 23rd of 2006.

15     HEARING OFFICER: HmmmHmmm.

16     MS. BERRY:  Okay. And when the parent and the advocate

17 arrived for the meeting, these folks were not ready to hold the

18 meeting, although the 23rd was one of the dates that they had on

19 their notice for their meeting.  And that is document number 29,

20 is the notice of the meeting that they sent us, and you'll take

21 note that the 23rd is one of their dates and they checked it out

22 – checked it off and sent it back. They were not prepared to go

23 forward with the meeting.  As the result the meeting did not

6

1    start until at least 10 o'clock that morning.  The parent and

2    the advocate went ahead with the meeting. However, they were not

3    able to complete the IEP at that meeting, stating that the

4    computer was not working.  They convened the MDT meeting; the

5    notes are in parent's exhibit number 26, which is the October

6    23rd meeting notes. And the October 25th, DCPS without the parent,

7    completed an IEP and forwarded it to the parent's attorney on

8    the 25th of October. And the document itself has the fax cover

9    page from DCPS with the printout on top of the document of the

10   date and time the document was sent to our office.  At the

11   October 23rd '06 meeting, the parent's advocate that DCPS re-

12   convene since they said the computer was not working, asked for

13   the MDT meeting to reconvene to complete an IEP for the student.

14   DCPS has not done so to this point. Therefore, violating – not

15   just violating the Order by not convening a meeting and doing an

16   IEP with the parent, but involving the parent in completing the

17   IEP, even though it was requested at the meeting on the 23rd.

18   Furthermore, if the Hearing Officer will take the note, his IEP

19   was done October 25th, 2006. His IEP before that was done two

20   years ago, November of 2004.  About two years the student did

21   not have an updated IEP.  And, --.

22       HEARING OFFICER: What is the date of the new IEP?

23       MS. BERRY: October the twenty – well the date on it is --.

7

1      HEARING OFFICER: I meant the exhibit?

2      MS. BERRY: Oh, Exhibit number is - number 26.

3      HEARING OFFICER: All right, let me make sure I understand

4  what you've said here.  DCPS was to convene - was to - was to

5  perform a psycho ed evaluation? It wasn't done. You got an

6  independently. Sent it over to the DCPS and after that - when

7  did you send the independent?

8      MS. BERRY: October the 9th.

9      HEARING OFFICER: October 9th.  And you indicated that DCPS

10  then provided you with several dates in a letter of invitation?

11      MS. BERRY:  Three dates. Correct.

12      HEARING OFFICER:  You checked one on the 23rd?

13      MS. BERRY:  Correct.

14      HEARING OFFICER:  Any communications with DCPS?

15      MS. BERRY:  By letter.

16      HEARING OFFICER:  By letter.  What letter?  What exhibit is

17  that?

18      MS. BERRY:  That's exhibit number 29.

19      HEARING OFFICER:  So, exhibit 29.

20      MS. BERRY:  Has the letter itself, and behind the letter is

21  our fax, cover page and fax confirmation stating we've chosen

22  the 23rd, please send us a confirmation for the date we chose.

23  We chose one of the dates they gave.

8

1  HEARING OFFICER:  So you just faxed this letter of

2 invitation back?

3  MS. BERRY: Faxed it back with our fax cover page, you can

4 look at the fax cover page and it indicates what we are saying.

5  HEARING OFFICER:  The 12th?

6  MS. BERRY: Right.

7  HEARING OFFICER:  Okay, so you and your client went – or

8 was it the advocate?

9  MS. BERRY:  Advocate and client.

10  HEARING OFFICER:  Is the advocate here?

11  MS. BERRY:  She is available by phone.

12  HEARING OFFICER:  Okay, because I may need to have her

13 testify?

14  MS. BERRY:  The mother was there too.  She was there even

15 before the advocate got there.

16  HEARING OFFICER:  The parent advocate – where was the

17 meeting to be held?

18  MS. BERRY:  At Johnson Jr. High School.

19  HEARING OFFICER:  At Johnson.

20  MS. BERRY:  Right.  The parent was there.

21  HEARING OFFICER:  And the advocate.

22  MS. BERRY:  And the advocate showed up.

23  HEARING OFFICER:  And what you said, DCPS could not move

1    forward on the meeting?

2        MS. BERRY:  DCPS was not ready to move forward until about

3    ten minutes till ten.

4        HEARING OFFICER:  What time did?

5        MS. BERRY:  Nine o'clock.

6        HEARING OFFICER:  Okay, so you waited an hour?

7        MS. BERRY:  Correct.  When the meeting finally started,

8    they held the meeting, and they said they could not do the IEP.

9        HEARING OFFICER:  So were appropriate officials at the

10   meeting?

11       MS. BERRY:  They did not have the clinical psychologist to

12   review the clinical that was done on June 14th of 05, which is

13   TH10.

14       HEARING OFFICER:  So that was the only missing person?

15       MS. BERRY:  Correct.

16       HEARING OFFICER:  So you had an exhaustive discussion but

17   for the clinical psychologist.

18       MS. BERRY:  Clinical psychologist was not there to review

19   the clinical psychologist.

20       HEARING OFFICER:  So at the end of the meeting --.

21       MS. BERRY:  And they refused to review the independent

22   psycho educational. They did their own psycho educational after

23   we had already got ours done.  They were.

10

1          HEARING OFFICER:  Was their psycho ed current?

2          MS. BERRY:  Ah, Yes. Both psycho eds were current.  But

3     they refused to --.

4          HEARING OFFICER:  Why would you do two?

5          MS. BERRY:  Because they didn't do it within the time, so

6     we had already referred it out. And it was already was done.

7     Ours was completed, but when we sent it out, they had not

8     completed theirs yet.

9          HEARING OFFICER:  So, DCPS decided to review their own

10    psych ed, but not the parent's.

11         MS. BERRY:  But not the parent's.

12         HEARING OFFICER:  And how did that damage you?

13         MS. BERRY:  Well, the psych educational evaluation that we

14    have which is parent's exhibit, number 27, --.

15         HEARING OFFICER: HmmmHmmm.

16         MS. BERRY: Okay?  It indicates and asked for (inaudible)

17    behavior skill for the student, it asks for special education in

18    a small structure classroom environment, and all academic areas.

19         HEARING OFFICER:  So now what is your remedy?  What remedy

20    are you seeking?

21         MS. BERRY: Well, there are more issues.

22         HEARING OFFICER:  Okay. How many more issues?

23         MS. BERRY: Let's point the Hearing Officer to the fact that

1  there is no functional behavior assessment done.  No Vineland

2  completed, it was recommended by the psycho educational.

3      HEARING OFFICER:  Which psycho educational?

4      MS. BERRY:  The independent.

5      HEARING OFFICER:  So there is an FBA that is recommended by

6  the Independent.

7      MS. BERRY:  A Vineland. Okay. The advocate requested

8  evaluation then.

9      HEARING OFFICER:  Okay, let me ask you questions.  So,

10  there is an FBA and a Vineland recommended by the Independent,

11  right?

12      MS. BERRY:  Correct.

13      HEARING OFFICER:  Any other outstanding evaluations?

14      MS. BERRY:  No, that's all we have right now.

15      HEARING OFFICER:  What's the next issue?

16      MS. BERRY:  The next issue is we asked for re-convening of

17  the meeting, they haven't done it.

18      HEARING OFFICER:  So, what's your remedy?

19      MS. BERRY:  We're asking for placement.  If you look at

20  TH26 and TH03, those are the IEP's. The two most recent IEP's.

21  The November 4th, 04 IEP and the October 25th 06 IEP.  You will

22  notice that his math calculation scores in 2004 --.

23      HEARING OFFICER:  Does either of those evaluations – I'm

1    sorry IEP's call for full-time?

2        MS. BERRY:  They call for 24 hours.  In the back it

3    indicated that he needs to be out of general education. But he

4    is at Johnson Jr. High School.

5        HEARING OFFICER:  Which is?

6        MS. BERRY:  A regular public school.

7        HEARING OFFICER:  All right, so your remedy is placement?

8        MS. BERRY:  Correct.

9        HEARING OFFICER:  And what else?

10       MS. BERRY:  He regressed in math calculation, 19 points, in

11   math reasoning 32 points, in reading comprehension 16 points, in

12   reading basic 14 points.

13       HEARING OFFICER:  Okay, you have to prove that though.

14       MS. BERRY:  That's right.  That is what I'm showing you. It

15   is in their documentation.  TH26 is the IEP they did on the 25th,

16   and TH03 is the IEP they did on November the 4th of 04.  If you

17   look at the second page where they document the student's

18   standardized scores, you'll take note that his standardized

19   score in math reasoning, the 04 IEP two years ago was 77. The 06

20   IEP is 58.  His math reasoning in the 04 IEP was 79 --.

21       HEARING OFFICER: I can read that.

22       MS. BERRY: Okay.

23       HEARING OFFICER: You don't have to read all that.

1        MS. BERRY: Further more, both IEP's have exactly, exactly

2   the same goals on all subjects.

3        HEARING OFFICER:  All right.  So you are saying that the

4   IEP is inappropriate?

5        MS. BERRY: Right. And the school is not appropriate because

6   he has regressed extremely so, by the highest is 32 points and

7   the lowest is 14 points.

8        HEARING OFFICER:  Okay.  Mr.

9        MS. BERRY:  I have a question.

10       HEARING OFFICER:  That's enough (chuckle).

11       MS. BERRY:   (Laughter).

12       HEARING OFFICER:  Mr. Price, what is your response to all

13  of this?

14       MR. PRICE: DCPS reserves.

15       HEARING OFFICER:  Who is your first witness?

16       MS. BERRY: The mother, and would also like to point to the

17  Hearing Officer, that the HOD from December 05 and the HOD from

18  June of 06 ask for DCPS to make a determination as far as

19  compensatory education is concerned. That wasn't done either.

20  If they re-convened, we could have done that.  And the advocate

21  requested a counter-tracking forms so that meeting in October.

22  They have not provided counter-tracking forms, so to see whether

23  or not he had been receiving all of his services, because his

14

1    mother was concerned that he may not have been, because she has

2    not seen his progress academically or in any other area.

3        HEARING OFFICER:  Did you request a encounter-tracking

4    form?

5        MS. BERRY:  Yes, in October. We still have not received

6    them. And it is in the meeting notes in October.

7        HEARING OFFICER:  All right.  Your first witness is the

8    parent?

9        MS. BERRY:  Yes.

10       HEARING OFFICER:  Would you raise your right hand?  Do you

11   swear to tell the truth, the whole truth and nothing but the

12   truth so help you God?

13       MS. HUNTER: Yes I do.

14       HEARING OFFICER: Please state for the record, your full

15   name and your residence?

16       MS. HUNTER: My name is Sharon L. Hunter.  My residence is

17   3574 Stanton Road, S.E., Washington, D.C. 20020.

18       HEARING OFFICER:  All right, go forward with your

19   examination.

20       MS. BERRY:  Okay.  What's your relationship to T_____?

21       MS. HUNTER: Mother.

22       MS. BERRY:  What school is T_____ going to?

23       MS. HUNTER: Johnson Jr. High School.

1      MS. BERRY:  Okay, before Johnson, where was he?

2      MS. HUNTER: He was going to Green Elementary School.

3      MS. BERRY:  I want to ask you how long if you remember, has

4  T̶y̶s̶o̶n̶ had - has T̶y̶s̶o̶n̶ been in Special Education?  Do you know?

5      MS. HUNTER: Since he was in the second grade.

6      MS. BERRY:  And how long have you been trying to get him

7  the proper services through DC Public Schools?

8      MS. HUNTER: For the last 5 to 4 years - 4 and a half years.

9      MS. BERRY:  And what has - and what if any response has

10  DCPS given you as far as providing him with the services?

11      MS. HUNTER:  Nothing really, none.

12      MS. BERRY:  When you say "none" what do you mean?

13      MS. HUNTER: Because my son, he is fifteen years old.  He's

14  fourteen years old. He doesn't know the months of the year, the

15  days of the week. He cannot write his name is cursor. He cannot

16  read cursory writing.  He doesn't know the days of the week.  He

17  doesn't know subtraction, multiplication. He barely knows

18  adding.  He barely knows his alphabets.  And he is not reading.

19  He is reading like on a first grade. I have a four-year old.

20  He's reading on the same level my four-year old is reading on.

21      MS. BERRY:  And has he always been in DC Public School

22  systems?

23      MS. HUNTER: Yes he has.

16

1      MS. BERRY:  Okay.  How long has he been at Johnson Jr. High

2   School?

3      MS. HUNTER: For two years.

4      MS. BERRY: And during his time at Johnson Jr. High School,

5   have you seen any progress on him?

6      MS. HUNTER: No I have not, none at all.

7      MS. BERRY:  None at all. Have you ever spoken to the school

8   about your concerns?

9      MS. HUNTER: Yes I have several times.

10      MS. BERRY:  And what if any response did they give you?

11      MS. HUNTER: One response was well he will catch up.  Or he

12   just taking a little more time because of his learning

13   disability and they are going to try to do their best in, and

14   they don't have the services.  And the teachers are not there

15   with him all the time, they have more than one child in the

16   class, they cannot deal with him, one-on-one learning sessions.

17      MS. BERRY:  This response was from whom?

18      MS. HUNTER: From Johnson Jr. High School.

19      MS. BERRY:  Okay. Have you ever been to Johnson Jr. High

20   School?

21      MS. HUNTER: Yes I have, several times.

22      MS. BERRY:  Have you ever seen the environment at Johnson

23   Jr. High School?

17

1          MS. HUNTER: Yes I have.

2          MS. BERRY:  Can you describe to us the environment?

3          MS. HUNTER: It's really rough because where - where we

4    live, it's like - just because the street that you live on, the

5    kids are being jumped on their way to school and from school and

6    inside of the school.  They was in the paper.  It was on the

7    news.  They have police officers at the door of the school, but

8    they don't have them outside of the school where the kids coming

9    in.  Several kids have been beaten, jumped, stabbed. Officers

10   they on duty and everything and my son is not a fighter. He's

11   scared. He is very scared, him and his friends they are so

12   scared, that they have not been going to school everyday. And

13   it's sad because, the kids wants to learn, but they can't learn

14   because they are scared. And I went to Johnson several times to

15   let them know what was going on at the school.  The first thing

16   they tell me is not happening at their school.  It's not

17   happening on their property.  It's happening off their property,

18   so they saying that they really can't do anything about it

19   because it's not on their property.  But it's on there way to

20   school, and coming from school and in school.

21         MS. BERRY:  Has it ever happened to T██████?

22         MS. HUNTER: Yes, he has been approached by kids coming

23   home, but just so happen, he was at by my daughter school and

18

1    the guard at my daughter school, the security guard at my

2    daughter school seen what was happening and went and got my son

3    and helped my son.

4        MS. BERRY:  Has anything happened to him in the school, in

5    the classroom?

6        MS. HUNTER: Yes it has.

7        MS. BERRY:  What?

8        MS. HUNTER: He was hit in the classroom. And when I went to

9    the school the next day to talk to the principal about it, they

10   called the child downstairs who had had the altercation with.

11   The child said he never hit T███████ and T██████ is telling me he

12   hit the child.  And T██████ told him that they were in a gang,

13   while the other child was sitting there, they wanted my child to

14   name all the people that was in the gang.  My son did not name

15   the people that were in the gang. He said he don't know their

16   names, but he knew their name.  He was scared to identify the

17   people fearing that he was going to be attacked when he leave

18   school that day.

19       MS. BERRY:  At the end of the school.

20       MS. HUNTER: At the end of the school day.

21       MS. BERRY:  Are they in the schoool?

22       MS. HUNTER: Yes they are still there at the school.

23       MS. BERRY:  Okay.  Have you asked for extra assistance or

19

1  help?

2      MS. HUNTER: Yes I have.  And they told me they cannot baby-

3  sit my son all day long because they have other schools in the

4  class—or other kids in the building and all they can do is try

5  to provide some safety for him while he is there.  But there is

6  no safety because you have to transfer at a certain time from

7  class-to-class and it's nobody to walk one child from class-to-

8  class to make sure he is not being attacked.

9      MS. BERRY:  And that's when it happens - switching class?

10      MS. HUNTER: And that's when it happens, when they switching

11  classes or when they even go to the bathroom there - they attack

12  at the bathroom.  And Johnson will not admit to that.

13      MS. BERRY:  And you are afraid for your son?

14      MS. HUNTER:  Yes I am.

15      MS. BERRY:  What would you like to see happen for T██████?

16      MS. HUNTER: I would like him transferred out of Johnson

17  into a better classroom, where he can learn, because he is 14

18  years old.  And he's not learning anything and I'm losing my son

19  to the streets because he's don't - he's learning - he doesn't

20  even - he just so frustrated.  He is just real frustrated. And

21  everything is going down, his level, his playing, going outside,

22  he doesn't want to go outside anymore.  Well he is in the

23  classroom, they'll call him. He is in a regular classroom. They

1  will give him the same work as the other kids and he is not

2  learning. He cannot do the work that they are giving him. They

3  said they are giving him the same kind of work, because they

4  don't want other kids to tease him.

5    MS. BERRY:  But he's getting the regular school?

6    MS. HUNTER: He's getting the regular schoolwork.

7    MS. BERRY:  He's not getting special education?

8    MS. HUNTER: No he's not. And he comes home crying because

9  he cannot read and he cannot write.

10    MS. BERRY:  No further questions.

11    HEARING OFFICER: Cross.

12    MR. PRICE: Good afternoon Ms. Hunter.

13    MS. HUNTER: Good afternoon.

14    MR. PRICE:  I'm just going to be very brief with you.  It's

15  correct that your primary concern is about the neighborhood turf

16  and feuds?

17    MS. HUNTER: No, it's not; it's about my son's education.

18    MR. PRICE:  Okay. You indicated that T███████ was not going

19  to school everyday.  That was your prior testimony, correct?

20    MS. HUNTER: Yes.  No, he's not going to school, he's

21  afraid.

22    MR. PRICE:  You indicated that T██████ was getting the same

23  work as other kids in the class?

21

1      MS. HUNTER: Yes he was.

2      MR. PRICE:  And your son is in the special ed class?

3      MS. HUNTER: Yes he is.

4      MR. PRICE:  So he would be receiving work from the same

5  students that are in that special ed class?

6      MS. HUNTER: No he was not getting the same work.  He was

7  getting the same work as regular kids in the class because they

8  said, they gave him that work because they didn't other students

9  to tease him. - The other students to tease him.

10      MR. PRICE:  Isn't it correct that your son's IEP provides

11  all the academic instruction to be in the special ed class?

12      MS. HUNTER: He is supposed to get the same - he is supposed

13  to get IEP help or however you putting it, the way he is

14  supposed to get it, he's not getting it.

15      MR. PRICE:  Okay.  My question to you, he doesn't take any

16  general education classes - academic classes correct?

17      MS. HUNTER: No.

18      MR. PRICE:  So the same work that you indicated he was

19  given to the other students, those other students are special

20  education students as well?

21      MS. HUNTER: No they wasn't.

22      MR. PRICE:  Are you sure you're with the DCPS psychological

23  educational evaluation that was conducted for your son?

1        MS. HUNTER: No, not the recent one.

2        MR. PRICE:  Are you familiar when it was done or anything?

3        MS. HUNTER: No I don't have the dates to when they was

4    done?

5        MR. PRICE:  But you are aware that it was done?

6        MS. HUNTER: Yes.

7        MR. PRICE:  Okay.  Are you aware about the independent

8    evaluation being done, correct?

9        MS. HUNTER: What do you mean independent?

10       MR. PRICE: Your son was tested twice for the same

11   information.  Were you aware of that?

12       MS. HUNTER: Yes.

13       MR. PRICE:  Okay.  And -

14       HEARING OFFICER: What number is DCPS psychological?

15       MR. PRICE:  It's not listed.

16       MS. BERRY: It's number 31.

17       HEARING OFFICER: 31?

18       MS. BERRY: HmmmHmmm.

19       HEARING OFFICER: And which one is the independent?

20       MS. BERRY: It's number 27.

21       HEARING OFFICER:  All right, I'm sorry, go forward.

22       MR. PRICE:  So, you participated in the MDT meeting in

23   October, correct? At Johnson?

1      MS. HUNTER: Yes I did.

2      MR. PRICE:  And at that meeting, you arrived, a little

3  after 9 o'clock, didn't you?

4      MS. HUNTER: No, she wrote the wrong time down, Ms. Jennings

5  did.  I arrived on time.  Me and Ms. Georgina.

6      MR. PRICE:  Okay.  Isn't it also correct, and I want to

7  follow my question, that your advocate arrived late as well,

8  after 9 o'clock?

9      MS. HUNTER: No she didn't.

10     MR. PRICE:  That's not correct.

11     MS. HUNTER: No.

12     MR. PRICE:  Now you indicated that you did participate in

13  the meeting?

14     MS. HUNTER: Yes I did.

15     MR. PRICE:  And you signed the notes indicating your

16  participation, correct?

17     MS. HUNTER: She was supposed to change it too.

18     MR. PRICE:  And so you signed it, with that information on

19  it, correct?

20     MS. HUNTER: Yes I did.

21     MR. PRICE:  And so you did a line through it saying, this

22  is wrong I'm not signing this, correct?

23     MS. HUNTER: I told her that it was the wrong time, she said

24

1  she was going to change it or reprint the paper.  But she kept

2  on saying something was wrong with the computer.

3      MR. PRICE:  So you signed it but you believe was wrong

4  information?

5      MS. BERRY: My client has asked and answered several times.

6      HEARING OFFICER: I'll allow it. I'll allow it.  Please.

7  I'm going to allow you all the room you want.  So I'm going to

8  allow him the same discretion.  You had wide latitude.

9      MR. PRICE:  Isn't it correct that at that meeting, your

10  advocate presented the independent evaluation to DCPS?

11      MS. HUNTER: I don't remember.

12      MR. PRICE: That's fine if you don't remember.  Is it also

13  correct at that meeting, that your son's truancy was raised to

14  your attention?

15      MS. HUNTER: Yes it was.

16      MR. PRICE:  And at that meeting it was indicated that he

17  had only been in school only two days of the school year thus

18  far.

19      MS. HUNTER: He was in the school more than the two days. He

20  was sitting in one classroom for over three weeks before they

21  realized he was not supposed to be in that class.

22      MR. PRICE:  Okay. So, again in the notes.

23      MS. HUNTER: He was in school.

1       MR. PRICE:  So again in the notes where it says, your child

2   was only in school for two days of the school year, you signed

3   the document but that didn't change that, correct?

4       MS. HUNTER:  I don't recall.

5       MR. PRICE:  Okay.  Let me present the witness with document

6   25, midway through where it indicates Mr. Mack, the attendance

7   counselor stated, if you can read that sentence there?

8       HEARING OFFICER: Where are you reading from Mr. Price?

9       MR. PRICE: Parent's number 25, midway through.  If you can

10  read that sentence there.

11      HEARING OFFICER: Starting where?

12      MR. PRICE: "Mr. Mack, the attendance counselor."  Mr. Mack

13  begins on the far right-hand side of the page.

14      HEARING OFFICER: I see Mr. Webster and Mr. Hunter, Ms.

15  Hill.  Am I going down too far? Okay.

16      MR. PRICE:  Okay, so.  Ms. Hunter, isn't it correct then

17  that the attendance counselor informed you and was noted in the

18  meeting notes that your son had only been to school two days

19  this year.  That information was printed and you signed it and

20  didn't make corrections saying that this was incorrect.

21      MS. HUNTER: True.

22      MR. PRICE:  Is it also correct that you indicated at the

23  meeting that the time that your son was not with the non-

1  disabled students assisted his self-esteem?  And you don't have

2  to do it, but I want to ask you did you remember it?

3      MS. HUNTER: Say it again, repeat the question.

4      MR. PRICE:  Isn't it true that during that meeting you

5  indicated to the team that it assisted your son self-esteem for

6  him to have time with his non-disabled peers?

7      MS. HUNTER: Yes, because if you was coming to the classroom

8  to take him out the classroom with the kids, they in the same

9  room, Yes, kids going to make fun of him because you're taking

10  him another special ed class.

11      MR. PRICE:  So then you agree that time with non-disabled

12  peers is good for T̶y̶̶̶̶̶ self-esteem, that's your statement?

13      MS. HUNTER: No.

14      MR. PRICE:  Time with his non-disabled peers ---.

15      MS. HUNTER: You're saying non-disabled peers, the children

16  are the same learning disabilities does he has or just regular

17  kids that can learn more.

18      MR. PRICE:  When he is with regular kids, it helps his

19  self-esteem.

20      MS. HUNTER: No it doesn't.

21      MR. PRICE:  It does not.

22      MS. HUNTER: He needs to be--.

23      MR. PRICE:  Okay, that's fine if you are saying no to that

27

1    question.  Now isn't that question contrary to what you stated

2    at the meeting at the 23rd, if you recall?  If you recall?  I

3    mean you don't have to read it.

4         MS. HUNTER: No I don't recall.

5         MR. PRICE:  Okay, now I want you to read it.  Did you find

6    it Ms. Hunter?

7         MS. HUNTER: No I didn't.

8         MR. PRICE:  Okay.  Ms. Hunter states it would – the

9    sentence before – go to two sentences before that one.

10         MS. BERRY: Ms. Hunter states that when he (inaudible)

11    education, (Inaudible) is effected?

12         MR. PRICE:  Is effective, that's correct?  So when he is

13    taken out of the general education setting, his self-esteem if

14    affected, he has an effect – it has an effect on his self-

15    esteem.  Being pulled away from the non-special ed students,

16    that was your statement then, correct?

17         MS. HUNTER: Yes it is.

18         MR. PRICE:  So that's contrary to what you stated just a

19    few moments ago, correct?

20         MS. HUNTER: Why would you --.

21         MR. PRICE:  Isn't it contrary --.

22         MS. HUNTER: Why would you already put him in a classroom

23    with the regular students and then come to the class and take

1    him out to a special ed--. Yes that is going to mess with his

2    self-esteem.  He is going to be teased.  You know it and I know

3    it too.  So when you tell me it already be --.

4         MR. PRICE: I want to have counselor to have her witness not

5    direct questions to me.

6         HEARING OFFICER:  All right, just try to answer the

7    questions the best you can Ms. Hunter.

8         MR. PRICE: So, those two statements are incompatible,

9    correct?

10        MS. BERRY: I have to object.  Only because, --.

11        MS. TILLIARY: Can the Hearing Officer look at the sentence?

12        HEARING OFFICER:  All right, Mr. Price, I got it.  Move it

13   forward.

14        MR. PRICE:  Move it forward.  Mrs. Hunter, isn't it also

15   true that you just - you wanted another school because of the

16   turf issues or feuds?

17        MS. HUNTER: No.  I've been fighting for the last four years

18   before this, before he even went to Johnson Jr. High School.  It

19   is not because of the turf, it's because of his education and

20   his learning disability, like I stated before.

21        MR. PRICE: Even before he was at Johnson, is it your

22   testimony now, that even before he was at Johnson, you didn't

23   want him at Johnson?

1      MS. HUNTER: He had no choice but to go Johnson.  That was

2  the school in my neighborhood. He was sent to Johnson, but

3  Johnson never helped him.

4      MR. PRICE: Okay.

5      MS. HUNTER: But it had nothing to do with the turf, or what

6  was going on between that.  Because when he first went to

7  Johnson, the turf or the beef, he wasn't even happening then.

8      MR. PRICE: You indicated that the – there was some physical

9  altercations or potential physical altercations that would

10  result based upon – as a result of children commuting walking

11  from school to home, from home to school correct?

12      MS. HUNTER: True.

13      MR. PRICE:  And you presented that to the IEP and Ms.

14  Jennings, correct? And isn't it also correct that Ms. Jennings

15  offered and provided transportation services for Tyrone?

16      MS. HUNTER: Yes.

17      MR. PRICE: Okay.  Now do you recall Ms. Irby a psychologist

18  at that MDT meeting?

19      MS. HUNTER: No, I don't recall.

20      MR. PRICE: You don't recall a Ms. Teresa Irby being present

21  at that meeting?

22      MS. HUNTER: She probably was there, but—I don't.

23      MR. PRICE: You don't recall.  Okay.  So you don't recall

30

1    there not being a psychologist there either?  They could have

2    been or they could not have been, based on your recollection.

3        MS. HUNTER: HmmmHmmm.

4        MR. PRICE: As a result of the meeting on 10/23, the team

5    did develop the service plan for your child, correct?  What

6    services your child would need, correct?

7        MS. HUNTER: No, we didn't come to an agreement there.

8        MR. PRICE: No, not necessarily an agreement, but they

9    determined which services your child T█████ needed?

10        MS. HUNTER: Yes, they did say what services were needed.

11        MR. PRICE: And they indicated that he would receive an ½

12    hour of counseling, correct?

13        MS. HUNTER: ½ hour of counseling, what kind of counseling?

14        MR. PRICE: It was I believe social emotional counseling.

15    If you don't recall specifically, that's fine.  But they also

16    agreed that they would provide one hour of speech language

17    services for T█████, correct?

18        MS. HUNTER: I'm asking for your memory, you don't have to

19    read it?

20        MR. PRICE: I don't remember it.

21        MS. HUNTER: Do you remember their offering the specialized

22    instruction for twenty-five hours? Where he would receive his

23    academics?

1      HEARING OFFICER: Mr. Price, where are you going with this,

2  now we do know that there was a meeting. We do know that the

3  parent attended the meeting. We do obviously know that if the

4  team was competent professionals that everything went well. The

5  only thing that counselor for the parent indicated is that there

6  was a missing psychologist.

7      MS. BERRY: Clinical.

8      HEARING OFFICER: Clinical psychologist.  That's the only

9  issues that as far, other than the fact that there was a failure

10  to provide the actual IEP to the parent because of equipment

11  problems.

12      MR. PRICE: And so my point is --.

13      MS. BERRY: The completion of the IEP.

14      MR. PRICE: The IEP was in fact done, the actual presenting

15  the paper was done the very next day because the computer was

16  broken. So it was not as though the team said, you know the

17  computer the down, the magic computer will spit out the services

18  for this student. We'll put in some data and the computer the

19  print out what services the student needs. So the IEP was in

20  fact completed for the student?

21      HEARING OFFICER: Now is the same IEP that we're looking now

22  in document number -.

23      MR. PRICE: Yes.

1      HEARING OFFICER: Number 26.

2      MR. PRICE: Yes.

3      MS. BERRY: The meeting was took place on the 23rd, if you

4  look at it.  The meeting notes are dated the 23rd.  DCPS

5  completed the IEP on the 25th.  And faxed the IEP to the parents

6  attorney on the 25th.

7      HEARING OFFICER: Did you disagree with the IEP and what it

8  said?

9      MS. BERRY: Well we want --.

10     HEARING OFFICER: Is it your claim, now I understand what

11 you are saying.  Is that there was a problem because you didn't

12 get the document.

13     MS. BERRY: No.  We didn't do the IEP together.  Like the

14 parent wasn't there. They don't review the goals with the

15 parent; they don't review why the goals have remained the same

16 for the past two years.  There was no discussion of the – of the

17 psycho educational evaluation to include any recommendations.

18     HEARING OFFICER: So you aren't satisfied with the contents

19 of the IEP?

20     MS. BERRY: Right.  And with the process of which the IEP

21 was done.

22     HEARING OFFICER: Does the parent's signature appear on it?

23     MS. BERRY: No.  She wasn't there.

33

1        MR. PRICE: No.  The IEP was done at the meeting. The form

2    was not printed and prepared because of a computer issue.

3        HEARING OFFICER: That's is not what parent's counsel is

4    saying.  She is saying --.

5        MS. BERRY: The date on the IEP.

6        HEARING OFFICER: She is saying that there was a meeting,

7    but there was not a completion of the IEP because the goals and

8    other information were not discussed.  That was done without the

9    participation of the parent. Correct? That's your allegation.

10       MS. BERRY: Correct.

11       MR. PRICE: And DCPS is countering that, on 10/23.

12       HEARING OFFICER: I have no problem with you countering. You

13   just have to prove it.  I mean, you aren't going to prove it

14   through this witness.

15       MR. PRICE: No I have to prove it.  I don't have the burden

16   of proof it.

17       HEARING OFFICER: I know you don't have the burden, but at

18   this point with her statement that she did not attend any final

19   meeting, that the IEP was not provided --.

20       MR. PRICE: I'll move on.

21       HEARING OFFICER: That the IEP was not provided until three

22   days later and the allegation is that, when it was provided it

23   was information that they had not discussed at that meeting.  I

34

1    mean that's what I got.  So they - seems to me that you would

2    have to rebut that by a rebuttal witness.

3        MR. PRICE: I'll move on, but I did that through their own

4    witness.  The witness.  I have no further questions with this

5    witness.

6        HEARING OFFICER: All right.

7        MS. BERRY: May I rebut?

8        HEARING OFFICER: Yes.

9        MS. BERRY:  Okay.  Did anyone tell you when you were

10   signing this, meeting notes, did anyone from DCPS say, if you

11   don't agree with anything, just scratch it out and put the right

12   stuff on it?

13       MS. HUNTER: No.

14       MS. BERRY:  Okay.  Did - just to clarify.  Did the attacks

15   only take place on the way to school.

16       HEARING OFFICER: I'm clear about the attacks. What I need

17   to understand and I guess, go ahead. Go ahead, I'm sorry.

18       MS. BERRY: This is just to clarify, about the

19   transportation thing - issue.

20       HEARING OFFICER: What I am getting that DC provided some

21   transportation services because of the issues that the parent

22   had cited and they resolved it by getting some form or

23   transportation, I guess tokens or something, what did they give

1   you?

2        MR. PRICE: Transportation.

3        MS. HUNTER: Transportation.

4        HEARING OFFICER: What type of transportation?

5        MS. HUNTER:  The bus was picking him up from my house in

6   the morning.

7        HEARING OFFICER: Okay.

8        MS. BERRY: Was he ever attacked in the school?

9        MS. HUNTER: Yes he was.

10       MS. BERRY: Okay.  Did that contribute to his fear of going

11  to school?

12       MS. HUNTER: Yes it did.

13       MS. BERRY: And just to clarify, you testified that when you

14  - when you informed them - the Johnson Jr. High School, they

15  said they can't watch him.

16       MS. HUNTER: Yes they can't do individuals watching him.

17       MS. BERRY: Just to clarify, when you met the (inaudible)

18  Hearing Officer of TH25, the MBT meeting notes, when you

19  indicated in this - okay, can you read that sentence.

20       MS. HUNTER: (Inaudible) when he was pulled out of general

21  education class, his self-esteem is affected.

22       MR. PRICE: Please - DCPS would object.  The document now,

23  we don't have the - the basis of DCPS objection is the fact,

36

1    it's second level hearsay.  The document itself has already been

2    admitted. The document which don't have a problem, well DCPS.

3         HEARING OFFICER: Mr. Price I am going to allow her to

4    explain what she was saying. Here is the key.  The documents –

5    were these notes prepared at the time of the meeting or were

6    they typed after the meeting or what?

7         MS. BERRY: It looks like they were typed.

8         HEARING OFFICER: Do you know Ms. Berry?

9         MS. BERRY: I am assuming it was done at the same time.

10        HEARING OFFICER: I don't want assumptions.  These are fact-

11   findings.  I need fact finding. Don't assume.

12        MS. BERRY: HmmmHmm.

13        HEARING OFFICER: You either know or you don't know.

14        MS. BERRY: HmmmHmm.

15        HEARING OFFICER: Were these meeting notes prepared at the

16   conclusion of the meeting? Do you know?

17        MS. BERRY: Not to my personal knowledge.

18        MR. PRICE: According to the parent's testimony, she signed

19   them after the material was written on there.  That would

20   present that they were done at the conclusion of the meeting.

21        MS. BERRY: And if the Hearing Officer reads the sentence, I

22   mean the sentence speaks for itself.

23        HEARING OFFICER: That is what he was saying.

1      MS. BERRY: Right.  It says, Ms. Hunter states when he is

2  pulled out of general education his self-esteem is affected.

3  Ms. Hunter states that the student did not receive any service

4  at Johnson.  Ms. Hunter states that she would like T██████ to go

5  to another school.  Where in there it says positive?

6      HEARING OFFICER: Okay. Okay. Was the advocate participating

7  with the parent?

8      MS. BERRY: She was at the meeting and her notes are in back

9  because she will testify to the fact that Ms. - the special

10 education coordinator told her she has to do her own notes,

11 because she can't write in their notes.

12     HEARING OFFICER: Okay, well all right. Any other questions

13 for the parent?

14     MS. BERRY: Oh yeah, I didn't finish my part of the

15 sentence?  My question is what did you mean by that statement?

16     HEARING OFFICER: Well we just said, we just went through

17 that Ms. Berry.  You indicated and I agreed that whatever the

18 statement is is there in the document.

19     MS. BERRY: No, because I think that the position of the

20 statement, I think.

21     HEARING OFFICER: I heard the witnesses' testimony and she

22 indicated that she didn't agree with being pulled out because

23 that affected his self-esteem.

1       MS. BERRY: Okay, then I'm done.

2       HEARING OFFICER: Did you say that parent?

3       MS. HUNTER: Yeah.

4       HEARING OFFICER: Any redirect?

5       MR. PRICE: No sir.

6       HEARING OFFICER: Okay parent I have some questions.  Just a

7   few.  On October the 23rd, at the MDT meeting, did you receive a

8   copy of the IEP?

9       MS. HUNTER: The one that did on the 25th?

10      HEARING OFFICER:  I'm asking you did you receive a copy of

11  the IEP on the 23rd?

12      MS. HUNTER:  No.

13      HEARING OFFICER:  When did you receive a copy of the IEP?

14      MS. HUNTER:  I didn't receive one.

15      HEARING OFFICER:  Did you counsel ever provide you with a

16  copy of the IEP, or the educational advocate?

17      MS. HUNTER:  No, I don't recall having one.

18      HEARING OFFICER:  When was the first time you saw the IEP?

19      MS. HUNTER:  I saw it afterwards because I went to her

20  office.

21      HEARING OFFICER:  Whose officer is "her"?

22      MS. HUNTER:  Georgina in my advocate's office.  I went to

23  the advocate's office a couple of weeks after this meeting, and

1   she told me about it, the one that they gave him.

2       HEARING OFFICER:  Did you participate in discussions

3   concerning goals and objectives for your son?

4       MS. HUNTER:  Yes at the meeting.

5       HEARING OFFICER:  So you did participate in the development

6   of goals and objectives at the meeting October 23rd meeting?

7       MS. HUNTER:  Yes.

8       HEARING OFFICER:  Is there anything in the IEP that you did

9   not participate in determining?

10      MS. HUNTER:  A placement for him and the - the hours that

11  they were going to give him and they were supposed to give him

12  more hours from the special ed. Give him more hours.

13      HEARING OFFICER:  So you disagree with the number of hours

14  --.

15      MS. HUNTER:  Yes I do.

16      HEARING OFFICER:  The number of hours that were provided

17  for your son?

18      MS. HUNTER:  Yes.

19      HEARING OFFICER:  Did you voice that disagreement at the

20  meeting?

21      MS. HUNTER:  Yes I told her at the meeting, but Ms.

22  Jennings, she had already written what she was writing and she

23  said, if we had any changes she was going to make them with my

1   Georgina as my advocate.  They were going to make the changes.

2          HEARING OFFICER:  So that Ms. Jennings informed you that if

3   there are any changes to the IEP it would be done between you

4   and your educational advocate --.

5          MS. HUNTER:  Yes.

6          HEARING OFFICER:  I mean, I'm sorry.  Ms. Jennings and the

7   educational advocate.

8          MS. HUNTER:  Yes.  That they were going to change it.

9          HEARING OFFICER:  All right. Next witness. While we are

10  waiting, was there a prior notice in the record of placement?

11         MS. BERRY: I don't think so.  Transportation form.  No.

12  (dial tone in background)  I'm sorry. Irritating isn't it?

13         HEARING OFFICER: Yes.

14         MR. PRICE: You asked if there was a "what form?"

15         MS. BERRY: Prior notice of placement?

16         MR. PRICE: Well there is a prior to actual notice which is

17  part of the IEP document, which indicates, what the service of

18  the (inaudible) level.

19         HEARING OFFICER: What exhibit is this?

20         MR. PRICE: It's the parent – whatever the IEP is?

21         HEARING OFFICER: The IEP is 26, so part of 26?

22         MR. PRICE: Yes, part of 26.

23         HEARING OFFICER: You are an educational advocate?  So what

1  are you going to do? What do you want to be done?

2      MS. BERRY: Hi. Is Georgina there?  Okay.

3      HEARING OFFICER: Do you want a couple of minutes.  Ms.

4  Berry?

5      MS. BERRY: Yes sir.

6      HEARING OFFICER: Would you like a couple of minutes of

7  recess in order to locate your witness.  Do you have another

8  witness after her, you are going to call?

9      MS. BERRY: Let me call High Road.  Oh, I'm sorry.  Hello,

10  This is Fatima Berry, I'm at the Hearing for T██████.  What is

11  it?  HmmmHmmm.  5295677 Okay. All right, thank you.  Hi may I

12  speak to David Clark please?  Okay, hold on please.  Can you

13  hear me?

14      MR. CLARK: Yes.

15      HEARING OFFICER: Whom am I speaking with?

16      MS. BERRY: David Clark.

17      HEARING OFFICER: Mr. Clark, this is Mr. Jones.  Charles R.

18  Jones, I'm the Hearing Officer.

19      MR. CLARK: Yes sir.

20      HEARING OFFICER: How are you?

21      MR. CLARK: I'm doing fine sir.

22      HEARING OFFICER: We're in the Hearing concerning T██████

23  Hunter.

1        MR. CLARK: Yes sir.

2        HEARING OFFICER: And parent's counsel has called you as a

3   witness.

4        MR. CLARK: Yes sir.

5        HEARING OFFICER: I'd like for you to raise your right hand.

6   Do you swear to tell the truth, the whole truth and nothing but

7   the truth, so help you God?

8        MR. CLARK: Yes I am sir.

9        HEARING OFFICER: Please state for the record, your full

10  name and your position or your occupation?

11       MR. CLARK: My full name is David Charles Anthony Clark. And

12  I am Director – Admissions Director for High Roads Schools of

13  Washington, D.C.   Hello?

14       HEARING OFFICER: Okay, go forward with your examination?

15       MS. BERRY: Okay.  Mr. Clark?

16       MR. PRICE: DCPS would – would—would object to this witness

17  as this is not the two witnesses identified from High Roads.

18       MR. CLARK: Hello?

19       MS. BERRY: Hold on.

20       HEARING OFFICER: Just a minute Mr. Clark.

21       MR. PRICE: Two witnesses identified by High Roads

22  specifically are a James Fowler and a Sharima Smith.

23       MS. BERRY: (inaudible).

43

1      MR. PRICE: Expressed (inaudible) Cl exclusius uno sp?

2  Identified two individuals and that, and now we're getting

3  someone that is not identified.

4      HEARING OFFICER: Okay.  I'll note your objection on the

5  fact that Mr. Clark was not personally identified, but he is -

6  but there is a designation and I'll allow it.  I have discretion

7  and to allow it.  So I'll allow Ms. Berry to have this witness

8  testify.  Go forward.

9      MS. BERRY: Mr. Clark?

10     HEARING OFFICER: But I'll note your objection, I'm sorry.

11  Go ahead.

12     MS. BERRY: Can you tell us your position at High Road,

13  please?

14     MR. CLARK:  Admissions Director of High Roads Schools of

15  Washington, D.C. M'ame. All of our schools in D.C.

16     MS. BERRY:  Okay.  Are you aware - well can you first tell

17  us about your program at High Road?

18     MR. CLARK:  Specifically program that we have identified

19  for T████ H████?

20     MS. BERRY:  Yes. Please.

21     MR. CLARK:  It's an LD school, although we're private, it's

22  therapeutic. It deals with students where there primary

23  disability is learning disabled, LD.  It's a therapeutic Day

1    Program, M'ame.

2       MS. BERRY:  Okay.  And what kind of services do you

3    provide?

4       MR. CLARK:  In terms of related services, we have speech

5    and language therapy, occupational therapy, reading specialist,

6    clinical licensed social workers, psychologists on staff and

7    also of course, specialized instruction in way of certified

8    special education teachers.

9       MS. BERRY:  And so you can provide him with the hours of

10   counseling that is enumerated in his IEP?

11      MR. CLARK:  Yes we would be able to M'ame.  We would be

12   able to provide T███████ and I'm just looking at his IEP now. From

13   10/25/2006, it called for .5 hours of psychological service.

14   Yes we would be able to provide that also. The one hour of

15   speech and language and his – I believe that is 25 hours of

16   special education – specialized instruction.

17      MS. BERRY:  Okay.  Mr. Clark?

18      MR. CLARK:  Yes.

19      MS. BERRY:  Would T██████ be pulled out of any general

20   education classes?

21      MR. CLARK:  No.  He wouldn't need to.  We are 100% out of

22   general ed.

23      MS. BERRY:  Okay.  What is your student to teacher ratio in

1   your classroom by your looking after T██████?

2       MR. CLARK:  Two to one.  They are eight students in the

3   classroom. There is a teacher and a teacher's assistant.

4       MS. BERRY:  Okay. T██████ is functioning about several

5   grades below, maybe four grade below level.

6       MR. CLARK:  Yes M'ame.

7       MS. BERRY:  Can you address that for him?

8       MR. CLARK:  Yes M'ame.  I believe we would be able to

9   address that for him. But the individualized attention of

10  course, from the (cough) excuse me, the small class sizes, I we

11  would be able to address his deficiencies M'ame.

12      MS. BERRY:  Okay. If he has any sort of attention problems,

13  can you address that issue.

14      MR. CLARK:  Yes we are M'ame.  In terms of the ADHD, are

15  you talking?

16      MS. BERRY:  Right, any type of attention.

17      MR. CLARK:  Yes M'ame.

18      MS. BERRY:  Are your teachers certified?

19      MR. CLARK:  Yes we are M'ame. And we are monitored by DCPS.

20      MS. BERRY:  Okay. Do you have related providers on campus?

21      MR. CLARK:  Yes M'ame.  Everything we provide is in-home.

22  The students don't need to leave the building and no one needs

23  to come into the building, they are already there.  So it's just

46

1  the fact that the student going from their classroom to a

2  related service area of our building to receive their services.

3       MS. BERRY:  Do you have behavior services at your program?

4       MR. CLARK:  Yes M'ame. We have – do you mean a behavior

5  modification program?

6       MS. BERRY:  Yes.

7       MR. CLARK:  Yes we do M'ame.

8       MS. BERRY:  And how does that work?

9       MR. CLARK:  Works on a point system. Where basically our

10  students are rewarded for positive good behavior, whether it

11  returning their point sheets, their homework, their class work.

12  They receive points that translate over into – excuse me,

13  (cough) rewards so students basically see the correlation

14  between doing what you have to do in school and in also rewards.

15  So, it's basically getting them ready as we say, the real world.

16  Because you know in the real word, in order to be able to

17  provide for yourself, you have to work. So they see that with

18  them doing what they do at school, they are benefits for that,

19  and consequently if you are not doing what you supposed to do,

20  you don't receive those benefits.

21       MS. BERRY:  All right. Thank you Mr. Clark.

22       MR. CLARK:  Yes M'ame.

23       HEARING OFFICER: Cross Examination?

47

1        MR. PRICE: Good afternoon Mr. Clark?

2        MR. CLARK: Yes sir.

3        MR. PRICE: Aaron Price with DCPS.

4        MR. CLARK: How are you doing sir?

5        MR. PRICE: All right.  Very briefly.

6        MR. CLARK: Yes sir.

7        MR. PRICE: The services that you identified that you can

8    provide for T█████, with a half of hour of counseling, an hour

9    of speech language and 25 hours of specialized instruction,

10   correct?

11       MR. CLARK: Yes.  I'm going by what is on his 10/25/2006

12   IEP, sir.

13       MR. PRICE: And so the services you believe currently that

14   the student needs are what is proposed by what is in the IEP

15   that's in effect?

16       MR. CLARK: Yes sir. I mean, by looking at his IEP still

17   current, so if that is what is called for we would be able to

18   provide, yes sir.

19       MR. PRICE: What is the primary designation of the

20   disability for students at your school?

21       MR. CLARK: LD.

22       MR. PRICE: Now you indicated that you have a therapeutic

23   school?

48

1       MR. CLARK: Yes sir.

2       MR. PRICE: And what is the purpose of the therapeutic

3   component?

4       MR. CLARK: Basically, in order for students to be able to

5   manage their own behavior. So everything we do is in line with

6   trying to get students to recognize their behavior and be able

7   to - just - not justify—to be able to rectify and control

8   themselves without outside influences.  So with the social

9   workers and so on, and its all leading them okay, you're having

10  a bad day, and you're having a stressful day and you want to act

11  out, what are some different ways to get where you need to go

12  without being a negative influence.

13      MR. PRICE: Now the therapeutic nature is generally designed

14  for students with emotional disturbances and difficulties

15  correct?

16      MR. CLARK: Not really.  Not really.  Any one can be able to

17  receive therapeutic, excuse me - therapeutic services.

18      MR. PRICE: Everyone.

19      MR. CLARK: Yes, it's not just for his - whether it be LD or

20  ED, students at this age, they need to be able to problem-solve

21  in different ways.  So it just not okay, it only works with LD

22  students or it just only works with ED students.  Hopefully, I

23  am answering your question.

1      MR. PRICE: Yes you are. Now, I have no further questions.

2      HEARING OFFICER: Ms. Berry you have the re-direct?

3      MS. BERRY: No sir.

4      HEARING OFFICER: All right, thank you Mr. Clark.

5      MR. CLARK: All right. Everyone have a great day.

6      MS. BERRY: You too. I cannot get her.  But, I mean guess

7   DCPS (inaudible). But I'd like to - if they are going to do an

8   opening, I'd like to reserve to try to get her.

9      MR. PRICE: DCPS is not going forward until Parent's counsel

10  has rest her case.

11     MS. BERRY: Okay.  Remember that.

12     HEARING OFFICER:  So, are you going rest now, is that your

13  --?

14     MS. BERRY: You know what, I'm going to try her one more

15  time. But I can rest on the documents.  She wrote everything

16  down anyway.  She wrote everything down on the notes anyway,

17  what she is going to say.  Can I have five minutes, or less

18  actually. I just want to get a number to call her.

19     MR. PRICE: DCPS doesn't oppose a five-minute recess.

20     HEARING OFFICER: All right. Five minutes.  All right.

21  We're on the record. It is now 12:50 on October - no, October -

22  January 11th.  I don't know where I got it.  January 11th. Oh,

23  October 23rd.  I'm so focused on the IEP. Okay, so. We're back,

1    we're reconvened.   I've allowed parent's counsel the courtesy of

2    waiting five minutes to allow her to be in contact with the

3    proposed witness.   Ms. Berry what is your situation?

4         MS. BERRY: I was not able to locate my witness on the

5    phone.

6         HEARING OFFICER: Do you have any other witnesses?

7         MR. BERRY: No.

8         MR. PRICE: DCPS asks for a directed verdict, directed

9    finding in this matter.   Parent counsel did not meet her burden

10   with respect the inappropriateness of the IEP and

11   inappropriateness of placement and even failed to either failed

12   to adhere to an HOD.

13        HEARING OFFICER: All right.   I won't allow that. Do your

14   closing.

15        MS. BERRY: Clearly the documents show that the student has

16   been in D.C. Public Schools.

17        HEARING OFFICER: Short closing.

18        MS. BERRY: Okay.   (Laughter).

19        HEARING OFFICER: I thought I might remind you, I've given

20   you the benefit of no directed verdict, but I want a short

21   closing.

22        MS. BERRY: I will try to put everything.

23        HEARING OFFICER: Okay.

51

1    MS. BERRY: You know, but. You know.  Clearly the son has

2    been at D.C. Public Schools for his entire school career and

3    clearly he has made no academic progress, in fact their

4    documentation clearly shows the opposite.  Major, major

5    regression.  He has regressed in every academic section, the

6    IEP's that DCPS completed, both IEP's, November 4th 04, and

7    October 25th, 06, clearly indicates the disparity between the

8    first IEP—the first scores and his second scores. His regression

9    ranges from 14 points to 32 points, the parent's exhibit number

10   TH03.  The November 04 IEP and document number TH26, the second

11   page of those documents you will see the regression.  And in

12   also IEPS as indicated were two years apart.  For two years they

13   almost – they almost two years, the student did not have working

14   IEP. Furthermore as the mother testified, there has been no

15   progress and he has had physical altercations at the school, he

16   has attacked at the school, in the school, not just on his way

17   to and from school. Yes as the mother testified, transportation

18   that the school provided, but the issue, even though he was

19   going to school to the bus, when he gets to school he was still

20   being attacked in the bathrooms, the hallways, when he was

21   switching classes, his constant fear in that school environment.

22   As a result and completely inappropriate another IDEA when

23   making a decision as to placement, the student's safety must be

1    taken into consideration. As such, DCPS did not follow IDEA

2    2004, in making their decision to keep him at Johnson Jr. High

3    School. Furthermore, his IEP clearly states out of general

4    education setting—(door opening).

5        HEARING OFFICER: No, we are in the process of having a

6    Hearing right now.  Go ahead.

7        MS. BERRY: His IEP and – in the back of the IEP, the

8    related services – the level of need is high. He was supposed to

9    receive out of general education services, the back of the IEP

10    indicates that the student requires small structured environment

11    to accommodate the disabilities. His evaluations indicated the

12    same.  His placement consideration on page – the last – which is

13    13, section 13. If you look at the disclosure on the top, it

14    says page 13, on the IEP, parent's exhibit number 26, it says

15    out of general education setting.  As a result the student

16    should not be at Johnson Jr. High School at all. Johnson Jr.

17    High School is not a out of general education school. It is a

18    public school where he supposed to get pulled out.  As the

19    mother testified, he was not being pulled out to provide

20    services to him. And as the mother testified, he is in a regular

21    classroom, a general education classroom setting.  And but his

22    IEP calls for more --.

23        HEARING OFFICER: Ms. Berry you just made a representation

1  that is not true.  The parent indicated that --.

2      MS. BERRY:  Oh, he is getting the same services. I'm sorry.

3  I retract that.  He is getting the same programming as the

4  regular students, I'm sorry.

5      HEARING OFFICER: No.  The question that Mr. Price posed to

6  her was whether or not the parent was - the student was being

7  pulled out. The parent said he was. And one of the concerns she

8  had was that he - his self-esteem was --.

9      MS. BERRY: Self-esteem was affected - correct.

10     HEARING OFFICER:  Affected by the pullout.  So.

11     MS. BERRY: And that he also - that he was receiving the

12  same programming as the regular kids and they indicated it was

13  because they did not want him to be teased by the regular kids.

14  As a result, obviously he is not receiving the appropriate

15  services. And they are not implemented the IEP as they

16  themselves indicated, it needs to be out of a general education

17  setting.  Furthermore, the notes clearly indicate that the

18  mother's concern to the school system. And if you look at

19  educational advocate notes in the back of those notes, where the

20  educational advocate wrote that they were not prepared to review

21  the Independent evaluation on the first page of the notes.  And

22  it also indicated that the advocate requested that DCPS to have

23  a clinical psychologist to be - to review the clinical

1    psychological that was done in 05, but they did not have a

2    clinical psychologist present to complete - to review - I'm

3    sorry—the clinical psychological evaluation.  Further the

4    advocate continued and requested at that meeting that they re-

5    convene since they said they could not complete the IEP at that

6    time.  They did not do so. Furthermore the advocate asked the

7    encounter tracking forms for that - at that meeting and again

8    they have not provided the encounter tracking forms. We also are

9    requesting a functional behavior assessment for the student, a

10   Vineland as requested by the September 06 psycho educational

11   evaluation.  That also has not been completed D.C. Public

12   Schools. Although the advocate --.

13        HEARING OFFICER: Are you suggesting Ms. Berry that DCPS is

14   responsible for reviewing two psych ed?

15        MS. BERRY: Yes!  The IDEA clearly gives the rights to

16   independent.

17        HEARING OFFICER: I understand.  I understand that they have

18   an independent capability.

19        MS. BERRY: HmmmHmmm.  And --.

20        HEARING OFFICER: But when DCPS provides a psycho ed, unless

21   you are in some sense objecting to that psycho ed, which we will

22   allow you the ability to get an independent, did you object to

23   the DCPS, independent, psycho ed?

1          MS. BERRY: The HOD gives us the right to the independent.

2   And we did the independent. And we sent them the independent.

3          HEARING OFFICER: The HOD gave you the right to an

4   independent?

5          MS. BERRY: Correct.  And we sent them the Independent,

6   October 9th.  And we have the fax information page.

7          HEARING OFFICER: Was that – was that finding?

8          MS. BERRY: Yes!

9          HEARING OFFICER: So why was DCPS doing a psycho ed on top

10  of it? Do you know Mr. Price?

11         MR. PRICE: The DCPS psycho ed was done in August, the

12  parent's psycho ed was done in September.  Their record does not

13  contain any communication indicating that the independent psycho

14  ed was transmitted to DCPS.  The only indication was at the MDT

15  meeting.

16         MS. BERRY: Okay. Document.

17         HEARING OFFICER: Okay. I'm sorry to interrupt you.  Go

18  ahead with your.

19         MS. BERRY: Document number TH – TH I'm sorry.  TH29 is our

20  letter in reference to --.

21         MR. PRICE: 29 I have is the MDT.

22         MS. BERRY: Right, but it is attached to – I'm sorry.  All

23  right.  I'm sorry, give me a second please.

1        HEARING OFFICER: What are you looking for?

2        MS. BERRY: The letter I showed where we sent the evaluation

3    to the school.

4        HEARING OFFICER: I can find it; I'll look through them all.

5        MS. BERRY: We sent the document on October 9th, of 2005.

6    The psycho education evaluation. It should have been reviewed

7    prior to the October 23rd meeting. They did not do so. When we

8    went to the meeting, they were not ready to review it. And the

9    law clearly indicates – ah, here we go.  It's – I'm sorry, I

10   have it.  It's the same document, 27, in the back of the psycho

11   ed is the fax cover page, for the confirmation that it was sent.

12       HEARING OFFICER: Mr. Price let her finish.

13       MS. BERRY: On the cover page, it says please find attached

14   the psycho education evaluation for T█████ H██████, date of

15   birth, June 17th. Please have DCPS review this evaluation and

16   provide with a copy of the review.  As recommended in the

17   aforementioned eval, please complete the (inaudible) behavior

18   and clinical evaluation on student.  Thank you for your prompt

19   attention to this matter.  None of that was done.  We've had 3

20   HOD's on this case, Mr. Hearing Officer.  December 05, March of

21   05, and now June of 06.  All of the HOD's were violated which is

22   why we keep coming back for a Due Process Hearing. This student

23   has remained in an inappropriate placement.  This student has

1    continued to regress. The mother is frustrated, she is at her

2    wit's end, she does not know what else to do.  This is the only

3    venue we have to provide this child with appropriate services.

4    As result we implore the Hearing Officer to look at the facts as

5    they are, to look at the fact that this student is extremely

6    behind, to look at the find that not just that he is behind, but

7    he has regressed extremely.  The IEP's have not been

8    appropriate, his goals have remained the same for the past two

9    years. If you look at both IEP's at every single goals, and

10   every section in math, written expression, reading, there are

11   the exactly the same word-for-word.  There is nothing different

12   on the goals.  If you review them and look at them at parent's

13   exhibit 3 and 26.  Furthermore, the DCPS has not presented any

14   evidence to counter what the parent has indicated, has not

15   presented any evidence to counter the documents presented at

16   this hearing. As a result we implore the Hearing Officer to read

17   the notes that the educational advocate wrote at that meeting on

18   the 23rd and to make sure that he looks at the top --.

19       HEARING OFFICER: Thank you for telling me how to do my job.

20       MS. BERRY: No.

21       HEARING OFFICER: I understand that exactly - are you

22   finished?

23       MS. BERRY: No, please real quick.  On the IEP, the top page

58

1   of the IEP, you'll see the date and time, but the IEP was faxed

2   to the parent's attorney, which is the October 25, 2006.  And if

3   you look at the cover page of the IEP, there is no signature,

4   but DCPS's signatures. The parent's signature was not there and

5   the advocate's signature was not there. As a result clear

6   evidence that IEP was done on the 25th, not on the 23rd.  We have

7   the Hearing Officer to order DCPS to place the student at High

8   Roads School of Washington, D.C., to complete the requested

9   evaluation, to convene a meeting to review the evaluations and

10  to make an appropriate determination as to what compensatory

11  education may be owed to the student due to his regression and

12  address those issues for the student as soon as possible.

13        HEARING OFFICER: Thank you.  Mr. Price.

14        MR. PRICE:  Very briefly.  DCPS will note will point the

15  Hearing Officer to certain documents.  The MDT notes which are

16  parent's number 25 clearly indicate that what in fact that

17  meeting was for.  The MDT meeting. The most telling DCPS

18  presents, being parent's advocate's notes. The advocates notes

19  indicate that Ms. Irby, who was psychologist, prepared to do

20  what they did at the MDT meeting reviewed evaluations.  There

21  has been testimony – no there has been representations that in

22  fact no IEP meeting occurred. The advocate's own notes indicate

23  on the 23rd, the IEP processing goals and objectives were

1    discussed for this student. The only issue was that the computer

2    in which a printed copy of the form was down and further

3    illustrated in the MDT meeting notes by the special - excuse me

4    by the attendance counselor when asked for a copy of the

5    Attendance records.  Those indicate - - those information was

6    later faxed to parent's counselor as noted in advocates own

7    notes, once the computer system would return. What we have here

8    is the school district listening to the parent, recognizing that

9    the parent's had concerns about the child's safety with regards

10   to commuting to school.  What did DCPS do? DCPS provided bus

11   transportation for a school, which is a neighborhood school,

12   which is totally out of the norm.  But DCPS acquiesced at that

13   point.  Let's look at the IEP that was drafted. At the meeting,

14   not necessarily the form.  The substance of the IEP that was

15   drafted at the meeting required the student to have his services

16   with the combination setting. The never was never to be

17   classified as 100% out of general education.  When you look at

18   the IEP, the IEP indicates 82% of the time the student to be

19   outside of the general ed population, meaning, 18% of the time

20   the student can be with the general ed population. Which is

21   consistent with what the parent stated in the meeting. The child

22   has self-esteem issues when removed from the non-disabled peers.

23   That is what DCPS did and is noted in the IEP. Additionally in

1    the disclosure document that parent submitted, DCPS received the

2    via the disclosure documents, the psycho education—the psycho

3    educational evaluation and a faxed copy - faxed cover letter

4    indicating what it was, but there is no indication that it was

5    received in DCPS's disclosure - that it was even transmitted.

6    This document doesn't even indicate that it was transmitted to

7    DCPS.  Accordingly, DCPS ask that this matter be dismissed with

8    prejudice.

9        HEARING OFFICER: Thank you very much the Hearing is

10   adjourned.  Thank you.

11

12

13

14

15

16

17

18