## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

SHARON HUNTER, *et al.*,

        Plaintiffs,

        v.                             Civil Action No. 07-695 (JMF)

DISTRICT OF COLUMBIA, *et al.*,

        Defendants.

## MEMORANDUM OPINION

This case was referred to me for all purposes including trial.  Currently pending and ready for resolution are the parties' cross motions for summary judgment.  For the reasons stated herein, both motions will be denied and the case will be remanded.

## BACKGROUND

This is an action brought by a then-14 year old child ("T.H.") and his mother (collectively "plaintiffs"), who complain that, although T.H. was determined to be in need of special education by the District of Columbia Public Schools ("DCPS"), he was not provided with the Free Appropriate Public Education ("FAPE") required by the Individuals with Disabilities Education Improvement Act of 2004 ("IDEIA"), 20 U.S.C. § 1400 *et seq.*[1]  Specifically, plaintiffs claim the following:

> (i) DCPS failed to comply with a June 19, 2006 Hearing Officer's Determination (hereinafter "HOD");
>
> (ii) DCPS failed to complete appropriate evaluations of the student and failed to evaluate him in all areas of suspected disability;

---

[1] All references to the United States Code are to the electronic versions that appear in Westlaw or Lexis.

    (iii) DCPS failed to provide T.H. with an appropriate
placement for over two years;

    (iv) DCPS failed to provide T.H. with [an] appropriate IEP
[Individualized Education Plan], special education and
related services and all his related services;

    (v) The hearing officer erred in not considering the
student's regression in deciding the case.

Motion for Summary Judgment ("Plains. Mot.") at 2.

   Defendants argue that there are three reasons why it is clear from the

Administrative Record that there has not been any denial of FAPE and that summary

judgment should be granted in their favor.  First, defendants contend that plaintiffs have

failed to show any loss of educational opportunity. Defendants' Cross Motion for

Summary Judgment and Opposition to Plaintiffs' Motion for Summary Judgment ("Defs.

Opp.") at 11.  Second, defendants contend that DCPS complied with the administrative

requirements of the IDEIA. Id. at 14.  Finally, defendants contend that T.H.'s

Individualized Educational Plan ("IEP") was appropriate and did provide some

educational benefit. Id. at 15.

## STATEMENT OF MATERIAL FACTS
## AS TO WHICH THERE IS NO GENUINE ISSUE

1.  T.H. is an African-American male who was born in 1992. Plains. Mot. at 4.

2.  On April 27, 2001, an IEP meeting was held for T.H. Administrative Record

   ("AR") at 76.

3.  On March 6, 2002, an IEP meeting was held for T.H. AR at 53.  The IEP team

   at the March 6, 2002 meeting consisted of 1) Isabelle Bartley, Classroom

   Teacher, 2) Anita Pottinger, Social Worker, 3) Reton Y. Gaffney, School

Counselor, 4) Sharon Hunter, T.H.'s mother, 5) B.P. Sharma, 6) Joyce

Gaillard, and 7) Ms. Johar, Special Education Teacher. AR at 53.

4.      In April of 2002, T.H. was given the Stanford Achievement Test. AR at 118.

5.      On April 29, 2002, T.H. was given a speech/language evaluation. AR at 140.

According to Joyce Gaillard, the Examiner, "speech/language intervention

services [were] not indicated." AR at 142.

6.      On March 5, 2003, DCPS issued a report of its psychoeducational

reevaluation of T.H. AR at 136.  According to Janice Smith, the Examiner,

T.H. needed "[c]ontinued services to address overall language skills including

reading, spelling and written expression." AR at 139.

7.      On March 20, 2003, an IEP meeting was held for T.H. AR at 46.  The IEP

team at the March 20, 2003 meeting consisted of 1) Isaac A. Snowden,

General Education Teacher, 2) Robert Orton, Special Education Teacher, 3)

Linda C. Brown, Speech Pathologist, 4) Reton Y. Gaffney, Counselor, and 5)

Sharon Hunter. AR at 46.

8.      In April of 2003, T.H. was given the Stanford Achievement Test. AR at 116.

9.      On June 11, 2004, DCPS conducted a psycho-educational re-evaluation of

T.H. AR at 133.  The report issued following the re-evaluation concluded the

following:  "[T.H.] is an eleven year-old boy who is functioning in the

Deficient to Borderline range of intelligence according to WASI results.

Academically, he is currently functioning at the third to first grade according

to K-TEA results.  It appears that [T.H.] continues to be eligible for special

education services." AR at 135.

10.     On August 11, 2004, T.H. was interviewed pursuant to the standards set by

the Vineland Adaptive Behavior Scales, which "measure the personal and

social skills of individuals from birth to adulthood." AR at 113.

11.     On September 29, 2004, an IEP meeting was held for T.H. AR at 41.  The IEP

team at the September 29, 2004 meeting consisted of 1) Patricia Harrower,

Special Education Coordinator, 2) Marnie M. Cato, Speech Language

Pathologist, 3) Jacqueline Colbourne, General Education Teacher, and 4)

Marcus Mickel, Special Education Teacher. AR at 41.

12.     On October 25, 2004, T.H. was given the Kaufman Test of Educational

Achievement. AR at 101.

13.     On October 25 and 26, 2004, DCPS conducted a psychoeducational

evaluation of T.H. AR at 120.

14.     On October 29, 2004, DCPS conducted a speech and language re-evaluation

of T.H. AR at 94.  According to Marnie M. Cato, the Speech-Language

Pathologist who conducted the evaluation, T.H. needed "[d]irect language

therapy twice a week for thirty minutes per session." AR at 100.  Cato also

recommended that T.H.'s IEP goals and objectives should address his 1)

receptive and express language skills, and 2) his receptive and express

vocabulary. AR at 100.

15.     On October 31, 2004, DCPS conducted a psychoeducational evaluation of

T.H. AR at 120.

16.     On November 4, 2004, an IEP meeting was held for T.H. AR at 26.  The IEP

team at the November 4, 2004 meeting consisted of 1) Sharon Hunter, 2)

Patricia Harrower, Special Education Coordinator, 3) Marnie M. Cato, Speech

Language Pathologist, 4) Jacqueline Colbourne, General Education Teacher,

5) Marcus Mickel, Special Education Teacher, 6) Janice Smith, School

Psychologist, and 7) Georgina A. Oladokun, Counsel for Hunter. AR at 26.

17.     In the report on the November 4, 2004 IEP meeting, the following conclusion

was reached:  "Based upon the documents reviewed the MDT determined that

[T.H.] continues to be eligible for special education services as a student with

multiple disabilities.  Specialized instruction is required in the following

subjects:  academic subjects[.]  The total amount of specialized instruction

required is:  26.5[.]  Related services are required in the following areas:

speech and language[.]  The setting accepted by the MDT is:  combination gen

ed [and] resource classroom." AR at 34.

18.     On April 9, 2005, DCPS issued a Social Work Report for T.H. AR at 90.

According to Anita Pottinger, the report's author, the report was conducted by

virtue of an HOD issued in March of 2005. AR at 93.

19.     On June 14, 2005, Interdynamics issued a Clinical Psychological Evaluation

report for T.H. AR at 85.

20.     On September 26, 2005, DCPS faxed plaintiffs' attorney a Letter of Invitation,

which proposed several possible dates for the next multidisciplinary team

meeting. AR at 150.

21.     On October 12, 2005, plaintiffs' attorney faxed DCPS a response to their letter

of October 7, 2005. AR at 148.  According to plaintiffs' counsel, Sharon

Hunter was available to meet with DCPS representatives on October 26, 2005, at 11:00 a.m. AR at 148.

22. On October 31, 2005, plaintiffs filed a complaint with DCPS, alleging that T.H. had been denied FAPE. AR at 23.

23. On November 29, 2005, plaintiffs' counsel faxed DCPS a letter responding to a Letter of Invitation that proposed several dates for the next multidisciplinary meeting. AR at 153.  According to plaintiffs' counsel, Sharon Hunter was available on either December 9, 2005 or December 13, 2005. AR at 153.

24. On December 2, 2005, the Director of the High Road School of Washington, DC sent plaintiffs' counsel a letter indicating that T.H. had been accepted into their program based on his IEP of November 4, 2004. AR at 165.  The letter also indicated that enrollment was contingent upon "proper authorization of an HOD and a Prior Notice Letter from DCPS." AR at 165.

25. On December 6, 2005, DCPS held a due process hearing in T.H.'s case. AR at 21.

26. On December 19, 2005, DCPS issued the HOD relating to the December 6, 2005 hearing. AR at 21.  The hearing officer ordered that the following issues be discussed at T.H.'s next MDT meeting:  1) the need for a psycho-educational evaluation, and 2) the form, amount, and delivery of any compensatory education. AR at 24.  The HOD also indicated that appeals of the decision could be made within 90 days. AR at 7.

27. On April 10, 2006, plaintiffs' attorney filed a Due Process Complaint Notice with DCPS. AR at 277.

28.     On April 11, 2006, DCPS faxed plaintiffs' counsel a copy of the Scheduling

        Memorandum that had been issued as a result of the filing of plaintiffs'

        complaint. AR at 429.

29.     On May 5, 2006, DCPS faxed plaintiffs' attorney a Letter of Invitation, which

        proposed several possible dates for the next multidisciplinary team meeting.

        AR at 159.

30.     On May 5, 2006, plaintiffs' attorney filed a Due Process Complaint

        Disposition. AR at 272.  According to the box marked on the form document,

        "[t]he resolution session was unsuccessful [and] [t]he case should proceed to a

        due process hearing." AR at 273.

31.     On May 12, 2006, plaintiffs' counsel faxed DCPS a letter responding to a

        Letter of Invitation that proposed several dates for the next multidisciplinary

        meeting. AR at 157.

32.     On May 23, 2006, plaintiffs' counsel faxed DCPS a letter responding to a

        Letter of Invitation that proposed several dates for the next multidisciplinary

        meeting. AR at 163.  According to plaintiffs' counsel, despite repeated

        attempts to schedule a meeting, she had not heard back from DCPS. AR at

        163.

33.     On June 2, 2006, DCPS filed a response to plaintiffs' due process complaint.

        AR at 269.  According to DCPS, it had on several occasions invited plaintiffs

        to participate in resolution sessions but had not heard from either plaintiffs or

        their attorney. AR at 269.

34.     On June 9, 2006, DCPS held a due process hearing on T.H.'s case. AR at 206.

Present at the June 9, 2006 hearing were 1) Karen Herbert, DCPS Attorney, 2)

Tamika Jones, plaintiffs' attorney, and 3) Vivian Jennings, DCPS Special

Education Coordinator. AR at 266.  In the HOD issued on June 19, 2006, the

following was ordered:  1) "DCPS shall perform a psycho-educational

evaluation no later than June 30, 2006.  If the evaluation is not timely

performed DCPS shall fund an independent psycho-educational [evaluation]

within the Superintendent's cost guidelines," 2) "within ten days of the receipt

of the evaluation, DCPS shall convene a MDT meeting to review all

evaluations, review and revise Petitioner's IEP, discuss and determine

placement, discuss and determine compensatory education, and develop a

compensatory education plan, if necessary," and 3) "all meetings will be

scheduled through parent's counsel and[] DCPS will be granted a day for day

extension for any delay caused by counsel for the parent/guardian, the

parent/guardian [sic], the student, or the educational advocate." AR at 208.

35.     On August 30, 2006, DCPS conducted a psychological reevaluation of T.H.

AR at 218.  According to Teresa Erby, School Psychologist and author of the

report issued subsequent to the August 30, 2006, evaluation, T.H. "should

continue to receive special educational services to address his academic

weaknesses in reading, math, and written language." AR at 221.

36.     On September 16, 2006, Interdynamics conducted a psychoeducational

evaluation of T.H. AR at 197.  According to the report, dated September 18,

2006, T.H. would "benefit from special education support services as a student with the handicapping condition of a Learning Disability." AR at 202.

37.    On October 5, 2006, DCPS issued a Letter of Invitation, which proposed several possible dates for the next multidisciplinary team meeting. AR at 211.

38.    On October 9, 2006, plaintiffs' counsel faxed DCPS a copy of a psycho-educational evaluation that had been administered to T.H. AR at 204. Plaintiffs' counsel requested that DCPS complete adaptive behavior and clinical evaluations on T.H. AR at 204.

39.    On October 12, 2006, plaintiffs' counsel faxed DCPS a letter responding to a Letter of Invitation that proposed several dates for the next multidisciplinary meeting. AR at 213.

40.    On October 18, 2006, Vivian Jennings, Special Education Coordinator at J. H. Johnson JHS, sent plaintiffs' counsel a letter indicating that DCPS had not received a response to their Letter of Invitation dated October 5, 2006. AR at 223.

41.    On October 19, 2006, plaintiffs' counsel responded by letter to Vivian Jennings' letter of October 18, 2006. AR at 227.  According to plaintiffs' counsel, Sharon Hunter had responded to the request by indicating that she was available to meet with DCPS on October 23, 2006. AR at 227.  Counsel also indicated that she had made attempts to contact Jennings by phone on several occasions and had left two messages. AR at 227.

42.    On October 20, 2006, plaintiffs' counsel faxed DCPS a letter responding to a Letter of Invitation that proposed several dates for the next multidisciplinary

meeting. AR at 214.  Plaintiffs' counsel indicated in the letter that she was awaiting confirmation from DCPS that the next MDT/IEP meeting would be held on October 23, 2006. AR at 214.

43.   On October 23, 2006, DCPS conducted a multidisciplinary team meeting. AR at 167.  Present at the meeting were 1) Sharon Hunter, 2) Georgina Oladokun, plaintiffs' counsel, 3) Teresa Erby, School Psychologist, 4) Vivian Jennings, Special Ed. Coordinator, 5) Laquita Hull, Special Education Teacher, 6) Darryl Webster, Social Worker, 7) Tol Johnson, Speech Therapist, and 8) T.H. AR at 167.

44.   On October 23, 2006, Vivian Jennings submitted a Student Transportation Data Form requesting that T.H. be provided transportation to and from J. H. Johnson JHS. AR at 195.  The justification for the request was listed as "[a] documented severe cognitive disability that prevents the student from walking or getting to school independently." AR at 196.

45.   On October 25, 2006, DCPS conducted an IEP meeting. AR at 179.  Present at the meeting were 1) Laquita Hull, Special Ed., 2) Vivian Jennings, LEA Representative, 3) Teresa Erby, School Psychologist, and 4) Darryl Webster, Social Worker. AR at 179.  On the same day, DCPS issued a Prior to Action Notice, in which T.H. was deemed still eligible for special education services. AR at 191.  In addition, the MDT proposed that T.H. be placed in an "out of general education setting." AR at 191.

46.   On November 9, 2006, plaintiffs filed a Due Process Complaint Notice with DCPS. AR at 251.

47. On November 9, 2006, DCPS sent plaintiffs' counsel a copy of the Scheduling Memorandum that had been issued as a result of the filing of plaintiffs' complaint. AR at 259.

48. On November 22, 2006, DCPS filed its response to plaintiffs' due process complaint notice. AR at 247.

49. On November 28, 2006, plaintiffs filed a request for a due process hearing with the Student Hearing Office. AR at 3.

50. On January 11, 2007, DCPS held a due process hearing in T.H.'s case. AR at 2.

51. The issue before the hearing officer at the January 11, 2007 hearing was "[w]hether DCPS denied the student FAPE by failing to comply with a Hearing Officer's Determination dated June 19, 2006 and by failing to conduct a Functional Behavioral Assessment?" AR at 3.

52. On January 16, 2007, DCPS issued the HOD relating to the January 11, 2007 hearing. AR at 2.  The hearing officer concluded that T.H. had not been denied FAPE and denied plaintiffs' request for relief. AR at 7.  The HOD also indicated that appeals of the decision could be made within 90 days. AR at 7.

## DISCUSSION

I. <u>Standards of Review</u>

    A. <u>Summary Judgment</u>

Both plaintiffs and defendants move for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure, which provides that "[t]he judgment sought should be rendered if the pleadings, the discovery and disclosure materials on file, and

any affidavits show that there is no genuine issue of material fact and that the movant is

entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c).  See Celotex Corp. v.

Catrett, 477 U.S. 317, 322-23 (1986); Friendship Edison Pub. Charter Sch. Collegiate

Campus v. Nesbitt, 532 F. Supp. 2d 121, 122 (D.D.C. 2008).

      B.      Review of Administrative Decisions Pursuant to the IDEIA

One of the stated purposes of the IDEIA is "to ensure that all children with

disabilities have available to them appropriate public education that emphasizes special

education and related services designed to meet their unique needs and prepare them for

further education, employment, and independent living." 20 U.S.C. § 1400(d)(1)(A).  As

stated by the Supreme Court in Honig v. Doe, 484 U.S. 305 (1988):

> The primary vehicle for implementing these congressional
> goals is the "individualized educational program" (IEP) . . .
> Prepared at meetings between a representative of the local
> school district, the child's teacher, the parents or guardians,
> and, whenever appropriate, the disabled child, the IEP sets
> out the child's present educational performance, establishes
> annual and short-term objectives for improvements in that
> performance, and describes the specially designed
> instruction and services that will enable the child to meet
> those objectives . . . The IEP must be reviewed and, where
> necessary, revised at least once a year in order to ensure
> that local agencies tailor the statutorily required 'free
> appropriate public education' to each child's unique needs.

Id. at 311.

In order to ensure that these goals are reached, the IDEIA also contains

comprehensive procedural safeguards.  Parties may first seek review in the form of an

impartial due process hearing before a hearing officer. 20 U.S.C. § 1415(f).  Appeals

from the hearing officer's determination or HOD may be had in a civil action. 20 U.S.C.

§ 1415(i).  Finally, the court may award attorneys' fees to the prevailing party. Id.

In seeking review of an HOD, the challenging party has the burden of persuasion. Reid ex rel. Reid v. District of Columbia, 401 F.3d 516, 521 (D.C. Cir. 2005).  Using a preponderance of the evidence standard, the reviewing court must "give 'due weight' to the administrative proceedings . . . and '[f]actual findings from the administrative proceedings are to be considered prima facie correct.'" Roark ex rel. Roark v. District of Columbia, 460 F. Supp. 2d 32, 38 (D.D.C. 2006) (citations omitted).  "[C]ourts may not substitute their own views for those of the hearing officer . . . and a court upsetting a hearing officer's decision 'must at least explain its basis for doing so.'" Id. (citations omitted).

Finally, in Board of Educucation of Hendrick Hudson Central School Distrist, Westchester County v. Rowley, 458 U.S. 176 (1982), the Supreme Court established the following two-part review of agency decisions under the IDEIA. Id. at 206-07.  First, the reviewing court must determine whether the state complied with the procedures set forth in the IDEIA. Id. at 206.  Second, the court must determine whether the IEP developed by the agency is "reasonably calculated to enable the child to receive educational benefits?" Id. at 207.  "If these requirements are met, the State has complied with the obligations imposed by Congress and the courts can require no more." Id.

II.    Analysis

   A.    DCPS's Compliance with the Procedural Requirements of the IDEIA

On June 9, 2006, DCPS held a due process hearing on T.H.'s case. AR at 206. Following that hearing, on June 19, 2006, an HOD was issued. Id.  Pursuant to the HOD, DCPS was directed to conduct a psycho-educational evaluation by June 30, 2006. Id. at 208.  DCPS was further directed to conduct, within ten days of the receipt of the results

from the evaluation, an MDT meeting. Id.  In fact, DCPS did not conduct a psychological reevaluation of T.H. until August 30, 2006. Id. at 218.  Furthermore, the MDT meeting did not occur until October 23, 2006. Id. at 167.

According to plaintiffs, had the meeting been convened in a timely fashion, DCPS would have been aware, based on the results of the psychological evaluation completed on August 31, 2006, of T.H.'s academic deficiencies and his regressions from 2004 to 2006 and would have further known that he needed one-on-one support. Id.  In addition, plaintiffs contend that DCPS failed to consider their independent psycho-educational evaluation of T.H. and that they failed to ensure that a qualified clinical psychologist was present at the October 23, 2006 MDT meeting. Id. at 9-10.  This, plaintiffs argue, is evidence that T.H.'s IEP was not derived with input from the parents. Id. at 11.  Plaintiffs further contend that the IEP was obviously not calculated to provide any benefit to T.H. because he had clearly regressed since his last IEP. Id.

Defendants counter that they did review all of the evaluations that were submitted prior to the October 23, 2006 MDT meeting but that plaintiffs did not submit their independent evaluation until the actual meeting.[2] Defs. Opp. at 14.  Defendants note also that Teresa Erby, a school psychologist, had reviewed the June 14, 2005 clinical psychological evaluations submitted by plaintiffs as well as two other evaluations conducted by DCPS. Id.  Finally, defendants argue that in order to constitute a denial of FAPE, a procedural violation must result in a loss of educational opportunity. Id. at 11.  According to defendants, therefore, neither their failure to convene a meeting within ten

---

[2] According to the MDT/IEP meeting notes from the October 23, 2006 meeting, plaintiffs indicated that DCPS was provided with a copy of their independent evaluation prior to the meeting. AR at 173.  Plaintiffs in fact contend that a copy of the independent evaluation was forwarded to DCPS on October 9, 2006 although no portion of the Administrative Record is cited in support of this statement. Plains. Mot. at 4.

days of DCPS's receipt or completion of the psycho-educational evaluation nor their decision not to consider plaintiffs' independent evaluation resulted in a loss of educational opportunity for T.H. Id. at 12-13.

In order to establish a violation of the IDEIA based on the DCPS's failure to follow statutory procedures, plaintiffs must show that that T.H.'s substantive rights were affected.  See Lesesne ex rel. B.F. v. District of Columbia, 447 F.3d 828, 834 (D.C. Cir. 2006) ("[A]n IDEA claim is viable only if those procedural violations affected the student's substantive rights."); N.G. v. District of Columbia, 556 F. Supp. 2d 11, 39 (D.D.C. 2008) ("This Circuit, along with several others, has also held that procedural violations of the IDEA can justify reimbursement 'if the violations affected the student's substantive rights.'") (citations omitted).

There is no evidence on this record that the two procedural violations, both of which defendants concede, negatively impacted T.H.'s substantive rights.  Although regrettable, the fact that the psychological evaluation occurred two months late did not result in the loss of any educational opportunity for T.H.  The evaluation was eventually conducted, and it was followed by a meeting of the MDT.  As for the timing of that meeting, although it is unclear from the record when DCPS received the August 31, 2006 report of the August 30, 2006 evaluation, an MDT meeting was held on October 23, 2006.  Plaintiffs claim that they didn't receive a copy of the August 30, 2006 evaluation until October 18, 2006. Plains. Mot. at 4.  That does not mean, however, that DCPS received its copy of the report on that same day.  At most, therefore, the meeting was convened roughly seven weeks late, if the court assumes that DCPS received the report on the date it was written.

According to plaintiffs, as a result of the MDT meeting not occurring in a timely fashion, T.H. did not receive an appropriate IEP. Plains. Mot. at 8.  Yet plaintiffs offer no explanation as to the significance of the date the MDT meeting actually took place.  In other words, why is the fact that the MDT meeting was held at the end of October as opposed to sometime between August 23, 2006 and October 23, 2006 supportive of plaintiffs' claim that T.H. did not receive an adequate IEP?  Also, even though plaintiffs complain that DCPS didn't review their independent evaluation, they cite the August 31, 2006 evaluation in support of their substantive critique of the IEP that was ultimately derived.  In support of their contention, plaintiffs write the following:  "In fact, the DCPS psychological evaluation completed on 08/31/06 clearly delineated his academic deficiencies and his regressions and as a result he needed the one-on-one support that he would have received if DCPS had complied with the HOD and taken into consideration the regression shown between 2004 and 2006." Plains. Mot. at 8.  Furthermore, plaintiffs cite the Administrative Record at pages 218-222, which is in fact the August 31, 2006 report.

Plaintiffs' argument that had DCPS considered the Interdynamics report it would have been aware of T.H.'s significant regression and would have fashioned his IEP differently, is simply not supported by the facts.  Defendants were well aware of T.H.'s regression at the time of the October 23, 2006 MDT meeting:  "[A]lthough DCPS did not conduct the psycho-educational evaluation by June 30, 2006, as ordered by the June 19, 2006 HOD, the evaluation was completed prior to the start of the 2006-2007 school year, and its results were utilized in developing the IEP." Defs. Opp. at 13.  A comparison of the test results reproduced in T.H.'s November 4, 1004 IEP with those from his August

30, 2006 Reevaluation, clearly shows T.H.'s regression.  Therefore, contrary to plaintiffs' assertion, T.H.'s substantive rights were in no way detrimentally affected by virtue of DCPS's failure to consider the results of the Interdynamics assessment conducted on September 16, 2006.

      B.    <u>Sufficiency of the IEP</u>

Plaintiffs argue that T.H.'s IEP was "obviously not calculated to provide educational benefit as the student has regressed terribly and the student's IEP hours were reduced with no conceivable reason for the reduction." Plains. Mot. at 11.  Plaintiffs add that "[a]lthough the DCPS claims T.H. made progress, they could [not] present any documentation to show this so-called progress." <u>Id.</u> at 12.

Defendants characterize plaintiffs' argument as "disingenuous" and note first that plaintiffs requested and DCPS agreed to transfer T.H. to the High Road School, where he would be placed in a full time special education/therapeutic program even though neither DCPS's August 30, 2006 assessment nor the assessment conducted by behalf of plaintiffs by Interdynamics on September 18, 2006, recommended a full time placement. Defs. Opp.  at 15.  Second, defendants list the services T.H. was to receive at High Road pursuant to the October 25, 2006 IEP:  1) 25 hours per week of specialized instruction, 2) 1 hour per week of speech-language instruction, and 3) 30 minutes per week of psychological services. <u>Id.</u>  The IEP also specified that T.H. would be in a special education setting for 82% of the time and in a general education setting for the remaining 18%. <u>Id.</u>

According to T.H.'s November 4, 2004 IEP, T.H. was to receive 26.5 hours of specialized instruction per week and an additional 1 hour per week of speech and

language services over a period of ten months for a total of 27.5 hours per week. AR at

291.  T.H.'s October 25, 2006 IEP reduced the overall amount of recommended services

by one hour per week by proposing 25 hours per week of specialized instruction, 1 hour

per week of speech and language services, and 0.5 hours per week of psychiatric services

over a ten month period. AR at 179.

In <u>Rowley</u>, the Supreme Court held that courts in the position of assessing

whether a child is receiving FAPE must focus on whether the child has "access to

specialized instruction and related services which are individually designed to provide

educational benefit to the handicapped child." <u>Rowley</u>, 458 U.S. at 201.  The Court noted

further that there existed "no additional requirement that the services so provided be

sufficient to maximize each child's potential commensurate with the opportunity

provided other children." <u>Id.</u> at 198.  In <u>Roark</u>, however, the District Court for the District

of Columbia added that "[a]cademic success *is* an important factor 'in determining

whether an IEP is reasonably calculated to provide education benefits.'" <u>Roark ex rel.</u>

<u>Roark v. District of Columbia</u>, 460 F. Supp. 2d at 44 (citations omitted) (emphasis

added).  <u>Accord</u> <u>Walczak v. Fla. Union Free Sch. Dist.</u>, 142 F.3d 119, 130 (2d Cir. 1998)

("An appropriate public education under IDEA is one that is 'likely to produce progress,

not regression.'") (citations omitted); <u>Danielle G. v. N.Y. City Dept. of Educ.</u>, 2008 WL

3286579, at *7 (E.D.N.Y. Aug. 7, 2008) ("A school district will fulfill its substantive

obligations under the IDEA if the student is likely to make progress, not regress, under

his IEP, and if the IEP affords the student with an opportunity 'greater than mere trivial

advancement.'") (citations omitted); <u>P.K. v. Bedford Cent. Sch. Dist.</u>, --- F. Supp. 2d ---,

2008 WL 2986408, at *11 (S.D.N.Y. Aug. 1, 2008) ("[I]n determining whether a school

district has met its obligations under the IDEA, a court must look for objective evidence in the record indicating whether the student would likely have progressed or regressed under the challenged IEP).

In this case, the IEP for the 2006-2007 year did not differ significantly from the IEP for 2004-2005.  Nevertheless, the parent, through her counsel, insisted that there was remarkable regression in T.H.'s academic achievement.  See, e.g., A.R. at 16 ("As a result of the denial of FAPE, the student has regressed academically and behaviorally."); A.R. at 279; Transcript of Hearing on Jan. 11, 2007 at 13 (counsel represents that T.H. "regressed in math calculation, 19 points, in math reasoning 32 points, in reading comprehension 16 points, in reading basic 14 points").

Unfortunately, at the hearing and in this court, DCPS does not answer these contentions by asserting that they are incorrect and that there is evidence of progress towards the goals DCPS itself set in the 2004.  Nor is there any answer to the claims, made below and now in this court, that DCPS never produced documentation of any progress towards the goals of the 2004 IEP.

It may well be inappropriate to assess the validity and sufficiency of an IEP solely by the student's lack of academic success after it is implemented.  There is necessarily a time lag between the creation of an IEP, its implementation by DCPS, and judicial evaluation of its sufficiency.  If progress or lack of it during that period of time was to become the only criterion of success, the court would be judging the sufficiency of the IEP by a single standard, rather than by the nuanced, deferential and multi-faceted approach it is supposed to use.  See D.F. ex rel N.F. v. Ramapo Cent. Sch. Dist., 430 F.3d 595, 598-99 (2d Cir. 2005) (quoting Roland M. v. Concord Sch. Comm., 910 F.2d 983,

992 (1st Cir. 1990)).  See also Thompson R2-J Sch. Dist. v, Luke P., ex rel. Jeff P., No.

07-CV-1304, --- F.3d ---, 2008 WL 3984361, at *8 (10th Cir. 2008).  Cf. Matrejek v.

Brewster Cent. Sch. Dist., 471 F. Supp. 2d 415, 431 (S.D.N.Y. 2005).

This case, however, does not present that problem for the question presented is

much narrower.  Since the 2004 and 2006 IEP's were all but identical, the failure of the

DCPS to answer and the hearing officer to even consider the claimed dramatic regression

of T.H. from 2004 to 2006 means that the most crucial criterion by which to judge the

efficacy of the 2006 IEP was ignored.  It is impossible for an IEP to be considered

sufficient when the only evidence presented is of its insufficiency and that evidence is not

rebutted by the DCPS or explained by the hearing officer.  It is a central principle of

administrative law that the agency must base its decision on the record; ignorance of one

party's central contention robs that decision of being described as a principled review of

what the record revealed. Martin v. Apfel, 118 F. Supp. 2d 9, 13 (D.D.C. 2000); N.G. v.

District of Columbia, 556 F. Supp. 2d at 34.  This record must therefore be remanded to

the hearing officer to consider the significance of the argument that T.H. had regressed

substantially and that therefore the 2006 IEP, which merely repeated the requirements of

the 2004 IEP, could not possibly provide T.H. with FAPE.  See Brown v. District of

Columbia, No. 07-CV-368, --- F. Supp. 2d ---, 2008 WL 2951979, at *9 (D.D.C. 2008)

(remanding case to hearing officer when undisputed evidence showed decline in test

scores over two year period).

In light of that regression and the fact that a new school year has now started, I

will order that the remand be completed and the case be returned to me within 60 days.

An Order accompanies this Memorandum Opinion.

_____/S/_____
JOHN M. FACCIOLA
UNITED STATES MAGISTRATE JUDGE

Dated:  September 17, 2008