UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

T.H. *et al.*,

      **Plaintiffs,**

      v.

**DISTRICT OF COLUMBIA *et al.*,**

      **Defendants.**

Civil Action No. 07-695 (JMF)

**MEMORANDUM OPINION**

I.    Prior Proceedings

Currently pending and ready for resolution is the only outstanding issue in this case, whether, in light of the Hearing Officer's determination ("HOD") of November 26, 2008, this case, brought under the Individuals with Disabilities Education Act ("IDEA"), 20 U.S.C.A. § 1400 *et seq.*,[1] should be dismissed. The 2008 HOD was issued in response to this Court's determination that a previous HOD, issued January 16, 2007, failed to consider the significance of the student's academic regression.

A detailed recitation of the facts appears in the Court's September 17, 2008 Memorandum Opinion, reported as Hunter v. District of Columbia, No. 07-CV-695, 2008 WL 4307492 (D.D.C., Sept. 17, 2008). Suffice it to say here that the Individualized Education Plan ("IEP") for the 2006-2007 academic year for the student, T.H., did not differ significantly from

---

[1] All references to the United States Code or the Code of Federal Regulations are to the electronic versions that appear in Westlaw or Lexis.

the IEP for the 2004-2005 academic year. Id. at *10. Nevertheless, and unfortunately, T.H. regressed academically in the same period of time. The first hearing officer, however, did not consider the significance of that regression, and I therefore remanded the case to the hearing officer to do so. Specifically, I stated:

> Since the 2004 and 2006 IEP's were all but identical, the failure of the DCPS to answer and the hearing officer to even consider the claimed dramatic regression of T.H. from 2004 to 2006 means that the most crucial criterion by which to judge the efficacy of the 2006 IEP was ignored. It is impossible for an IEP to be considered sufficient when the only evidence presented is of its insufficiency and that evidence is not rebutted by the DCPS or explained by the hearing officer. It is a central principle of administrative law that the agency must base its decision on the record; ignorance of one party's central contention robs that decision of being described as a principled review of what the record revealed. Martin v. Apfel, 118 F.Supp.2d 9, 13 (D.D.C.2000); N.G. v. District of Columbia, 556 F.Supp.2d at 34. This record must therefore be remanded to the hearing officer to consider the significance of the argument that T.H. had regressed substantially and that therefore the 2006 IEP, which merely repeated the requirements of the 2004 IEP, could not possibly provide T.H. with FAPE[2]. See Brown v. District of Columbia, No. 07-CV-368, --- F.Supp.2d ----, 2008 WL 2951979, at *9 (D.D.C.2008) (remanding case to hearing officer when undisputed evidence showed decline in test scores over two year period).

Id.

II.     Proceedings on Remand

On remand, the hearing officer considered T.H.'s regression but concluded that T.H.'s failure to make any progress did not mean that the IEPs at issue were inadequate. The hearing officer stated:

> It does not necessarily follow that because Petitioner's goals and objectives did not materially change from 2004 to 2006, the 2006 IEP was necessarily

---

[2] "Free and Appropriate Public Education"

> inappropriate.  If Petitioner had not made satisfactory progress on his 2004 goals and objectives, the 2006 goals and objectives would not change.  There may be many reasons for the lack of progress: perhaps the delivery of services was inadequate, perhaps Petitioner did not put forth an adequate effort, perhaps Petitioner was excessively absent, perhaps Johnson [Junior High School] did not implement the IEP, or perhaps Johnson was not capable of meeting Petitioner's needs.  Thus, an IEP reasonably calculated to impart educational benefit might fall short of that goal for reasons other than its inadequacy.

Status Report, Exhibit A at 9 [#23].

III.	The Parties' Contentions

According to plaintiffs, this conclusion was based on conjecture rather than substantive grounds.  Memoranda of Points and Authorities in Support of Plaintiffs' Request that the Court Vacate the November 26, 2008 Hearing Officer's Determination at 4.

Plaintiffs also quarrel with the Hearing Officer's comparison of the student's situation to those cases which stand for the proposition that a "lack of progress and regression are not valid reasons to determine that the IEP was inappropriate." Id.  According to plaintiffs, the issue is not whether the IEP provides for a particular modality or whether it provides the student with the most benefit, but simply whether the IEP is adequate. Id. at 5.  Plaintiffs conclude that because the student's testing scores show that he regressed in all subjects and because he didn't receive any educational benefit from his most recent IEP, he was therefore denied a FAPE. Id. at 8.

Finally, plaintiffs argue that the student's placement in a public school was inappropriate, and that defendants violated the June 19, 2006 HOD by failing to convene a meeting within ten days of the completion of the student's psycho-educational evaluation. Id. at 9-10.

Defendants contend that plaintiffs' attempts to distinguish the case law cited by the Hearing Officer fall short in that the cases do not, as plaintiffs contend, stand for the proposition that a student's lack of academic progress renders his IEP inadequate. Defendants' Reply to

Plaintiffs' Response to Show Cause Order at 3-4.  Defendants also argue that plaintiffs' remaining two arguments regarding the student's placement and the District of Columbia Public School's failure to convene a meeting within the ten-day period required by statute were previously resolved by the Court and therefore not before it now. Id. at 2.

IV.   Analysis

Although plaintiffs dismiss as conjecture the ultimate conclusion of the hearing officer that T.H.'s regression could not be attributed to deficiencies in his IEP, his determination that the record before him, including the evidence of T.H.'s regression, did not permit the conclusion that the IEP was in itself deficient fulfilled the remand.  It cannot possibly be dismissed as arbitrary or unreasonable. The law has always found the reasoning of "*post hoc propter hoc*"[3] fallacious[4].  It is therefore fallacious to reason that the IEP caused this regression because T.H. regressed after its creation, when there were other equally valid reasons for his regression.

Indeed, in making the claim that the hearing officer's conclusion was based on conjecture, plaintiffs fail to see that they are making the perfect converse of the very argument they condemn.  As they condemn the conclusion that T.H.'s regression might have been attributable to other causes than the IEP as speculative, they insist that since T.H. did not make progress it must be because of the deficiencies in the IEP even though that proposition is no more or less likely than the proposition that there were other reasons.  It therefore follows that

---

[3] "[A]fter this, therefore because of this."  Black's Law Dictionary 1205 (8th ed. 2004).

[4] "Of or relating to the fallacy of assuming causality from temporal sequence; confusing sequence and consequence." Id.

4

plaintiffs, who had the burden of showing the deficiencies were attributable to the IEP,[5] failed because they can point to no evidence or logical reason why it is more probable than not that the IEP caused T.H.'s lack of progress.  Since they failed to meet that burden, it follows that the HOD must stand because plaintiffs cannot point to a single reason in support of their argument that it was inappropriate for the Hearing Officer to conclude that 1) even though the student failed to advance academically, the IEP was not necessarily to blame, and that 2) other factors such as the adequacy of the delivery of services, the effort put forth by the student, the student's attendance, whether the school implemented the IEP, and the school's ability to implement the IEP potentially had something to do with the student's lack of progress. See id.

In addition, as this Court noted in its previous opinion, the sufficiency of a student's IEP is not measured solely by his academic success. See Hunter, 2008 WL 4307492 at *10 and cases cited therein ("If progress or lack of it during that period of time was to become the only criterion of success, the court would be judging the sufficiency of the IEP by a single standard, rather than by the nuanced, deferential and multi-faceted approach it is supposed to use."). While academic success may be an important factor and may even be the most important factor, it is not the only one.  In other words, even though plaintiffs argue that some evidence of academic progression is necessary in order for a Hearing Officer and a reviewing court to conclude that a student's IEP was adequate, the bottom line is that this is not mandated by the statute.  Rather, as articulated recently by the Fourth Circuit, "progress, or the lack thereof, while important, is not dispositive." Simchick v. Fairfax County Sch. Bd., 553 F.3d 315, 327 (4th Cir. 2009) (considering the adequacy of a student's private school placement for purposes of

---

[5] See Schaffer ex rel. Schaffer v. Weast, 546 U.S. 49, 62 (2005) ("The burden of proof in an administrative hearing challenging an IEP is properly placed upon the party seeking relief.").

reimbursement under the IDEA); see also Bd. of Educ. v. Rowley, 458 U.S. 176, 207 n.28 (1982) ("[T]he achievement of passing marks and advancement from grade to grade will be *one* important factor in determining educational benefit.") (emphasis added).

Finally, plaintiffs do not address the fact that, as highlighted by the Hearing Officer, the Multidisciplinary Team ("MDT"), in recognition of the student's underachievement, "increased the intensity of services provided" by "changing his setting from a combination general education/resource room setting to a small, structured class in an out of general education environment in all academic areas." 2008 HOD at 9. This change in the student's IEP is by no means minor and confirms the MDT's efforts to address the student's recognized academic failings. As stated by the Hearing Officer, "This is not a case in which the 2006 MDT took no action in response to Petitioner's lack of improvement. The MDT revised Petitioner's IEP to be the most restrictive IEP possible short of ordering a private school placement." Id. at 8.

In light of the fact that plaintiffs have not put forth any evidence that the student's IEP was not "reasonably calculated to enable him to receive educational benefits,"[6] coupled with the fact that "courts may not substitute their own views for those of the hearing officer,"[7] the Court must uphold the 2008 HOD. Having thus affirmed the Hearing Officer's conclusion that the student was not denied FAPE, the Court does not reach the issue of whether the student's placement was appropriate. Furthermore, the Court notes that the issue of defendants' procedural violation was resolved in its September 2008 opinion and therefore is moot. See Hunter, 2008 WL 4307492 at *7-8.

---

[6] Rowley, 458 U.S. at 207.

[7] Roark ex rel. Roark v. District of Columbia, 460 F. Supp. 2d 32, 38 (D.D.C. 2006).

A Final Judgment accompanies this Memorandum Opinion.



                                                                       /S/
                                                JOHN M. FACCIOLA
                                                UNITED STATES MAGISTRATE JUDGE

Dated: June 1, 2009